1    SEDGWICK, DETERT, MORAN & ARNOLD LLP
     REBECCA A. HULL  Bar No. 99802
2    CHRISTOPHER KELLER  Bar No. 178491
     One Market Plaza
3    Steuart Tower, 8th Floor
     San Francisco, California 94105
4    Telephone: (415) 781-7900
     Facsimile: (415) 781-2635
5    email: rebecca.hull@sdma.com
6    email: christopher.keller@sdma.com
     Attorneys for Defendant
7    KAISER PERMANENTE FLEXIBLE
8    BENEFITS PLAN

9                        UNITED STATES DISTRICT COURT

10                      NORTHERN DISTRICT OF CALIFORNIA

11

12   DONALD GRACEY,                      CASE NO. C 07-03853 (VRW)

13        Plaintiff,                     **DEFENDANT KAISER PERMANENTE**
                                         **FLEXIBLE BENEFITS PLAN'S NOTICE**
14        v.                             **OF MOTION AND MOTION FOR**
                                         **SUMMARY JUDGMENT AND**
15   KAISER PERMANENTE FLEXIBLE          **MEMORANDUM OF POINTS &**
16   BENEFITS PLAN,                      **AUTHORITIES IN SUPPORT THEREOF**

17        Defendant.                     **DATE: FEBRUARY 14, 2008**
                                         **TIME:  2:30 P.M.**
18                                       **COURTROOM:  6**
                                         **JUDGE: HON. VAUGHN R. WALKER**
19

20

21

22

23

24

25

26

27

28

SEDGWICK
DETERT, MORAN & ARNOLDLLP

         DEFENDANT'S NOTICE OF MOTION & MOTION FOR SUMMARY JUDGMENT AND MPA ISO THEREOF

1

**TABLE OF CONTENTS**

2

**PAGE**

3    I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 2

4    II.    STATEMENT OF FACTS ................................................................................ 3

5        A.    LTD Benefits Under the Plan.............................................................. 3

6        B.    Chronological Summary of Claim ....................................................... 5

7            1.    Gracey's Employment with KFHP ............................................ 5

8            2.    Gracey's April 28, 2006 Claim for LTD Benefits ....................... 6

9
10          3.    Attending Physician's Further Statement in August 2006,
                    Submission of Additional Medical Documents, and
11                  Reconsideration of Gracey's Claim ........................................... 7

12          4.    Gracey's Appeal of the September 6, 2006 Denial of LTD
                    Benefits ............................................................................... 8

13
14          5.    October 16, 2006 Complaint to the California Insurance
                    Commissioner ....................................................................... 8

15          6.    In February 2007, Gracey Appointed New Counsel and
16                  Submitted More Medical Documents to Support His Claim........... 9

17          7.    Gracey's Entire File Was Reviewed by Two Independent
                    Physician Consultants, Board Certified in Internal Medicine
18                  and Neurology....................................................................... 9

19          8.    Dr. Patel, Board Certified Internist with a Subspecialty in
                    Cardiovascular Disease Opined That Gracey Was Not
20                  Functionally Impaired ............................................................ 9

21          9.    Dr. Jares, a Board Certified Neurologist, Opined That Gracey
22                  Was Able to Perform Sedentary to Light Duty Work................... 10

23          10.   Metlife Sent Dr. Patel's and Dr. Jares' Reports to Gracey's
                    Counsel for Review and Response by Gracey's Treating
24                  Physicians............................................................................ 10

25          11.   Metlife Reviewed the File to Determine Whether Gracey Had
26                  Reported Medication Side Effects That Disabled Him from His
                    Own Occupation. ................................................................. 11
27
28          12.   July 5, 2007, Determination on Appeal Upholding the Claim
                    Denial................................................................................. 12

SEDGWICK
DETERT, MORAN & ARNOLD LLP

DEFENDANT'S NOTICE OF MOTION & MOTION FOR SUMMARY JUDGMENT AND MPA ISO THEREOF

1

**Table of Contents**
**(Continued)**

2

**PAGE**

3  III.    ARGUMENT .................................................................................................................. 12

4          C.    The Denial Was Not an Abuse of Discretion......................................................... 12

5                1.    Abuse of Discretion Review Applies........................................................... 12

6                2.    The Decision Should Be Afforded a High Degree of Deference.............. 14

7          D.    The Record Shows That Gracey Was Not Disabled Under the Plan .................... 15

8                1.    Gracey Failed to Provide Sufficient Evidence of Functional
9                      Impairment................................................................................................. 15

10               2.    The Plan Was Entitled to Credit the Opinions of the Board
11                     Certified IPCS ........................................................................................... 17

12 IV.    CONCLUSION .............................................................................................................. 18

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

 28

1

# TABLE OF AUTHORITIES

2

**PAGE**

3

## FEDERAL CASES

4

*Abatie v. Alta Health & Life Ins. Co.,*
5
   458 F. 3d 955 (9th Cir., 2006) ...........................................................................................13, 14

6

*Black & Decker Disability Plan v. Nord,*
   538 U.S. 822 (2003)..........................................................................................................17, 18

7

*Bratton v. Metropolitan Life Ins. Co.,*
8
   439 F. Supp. 2d 1039 (C.D. Cal. 2006) .......................................................................15, 16, 17

9

*Firestone Tire & Rubber Co. v. Bruch,*
   489 U.S. 101, 109 S. Ct. 948 (1989).....................................................................................13

10

*Hunt v. Metropolitan Life Ins. Co.,*
11
   425 F. 3d 489 (8th Cir. 2005) .................................................................................................18

12

*Jordan v Northrop Grumman Corp Welfare Benefit Plan,*
13
   63 F. Supp. 2d 1145 (C.D. Cal. 1999) *aff'd*, 370 F. 3d at 882........................................5, 16, 17

14

*Leipzig v. AIG Life Ins. Co.,*
   362 F. 3d 406 (7th Cir. 2004) .................................................................................................17

15

*Martin v. Continental Cas. Co.,*
16
   96 F. Supp. 2d 983 (N.D. Cal. 2000) .....................................................................................17

17

*Semien v. Life Ins. Co. of North America,*
   436 F. 3d 805 (7th Cir. 2006) .................................................................................................17

18

## FEDERAL STATUTES

19

29 C.F.R. § 2560-503-1(h)(3)(iii), (4) ...........................................................................................15

20

29 U.S.C. § 1001...........................................................................................................................1, 2

21

22

23

24

25

26

27

**SEDGWICK**
DETERT, MORAN & ARNOLD₁₁₁ 28

1    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2        **PLEASE TAKE NOTICE** that on February 14, 2008, at 2:30 p.m., or as soon thereafter

3    as the matter may be heard, in Courtroom 6 of this Court before the Honorable Vaughn R.

4    Walker, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California 94102,

5    defendant Kaiser Permanente Flexible Benefits Plan ("Plan") will and hereby does move for

6    summary judgment on plaintiff Donald Gracey's claim for long term disability ("LTD") benefits

7    under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. section 1001, *et seq*.

8        This motion is made on grounds that the Plan's claim administrator did not abuse its

9    discretion when it denied plaintiff's claim for Plan benefits on the ground that plaintiff's alleged

10   disability did not preclude him from performing a light duty job, and that determination is

11   entitled to a high degree of deference under the circumstances.  As such, the Plan is entitled to

12   summary judgment.

13       This motion is based on this notice of motion and motion, the accompanying

14   memorandum of points and authorities, the administrative record lodged herewith, the

15   Declaration of Margaret Calderon filed herewith, the pleadings and other documents on file in

16   this action, and on such other and further matters as may be presented to the Court at or prior to

17   the hearing.

18
     Dated:  January 10, 2008            SEDGWICK, DETERT, MORAN & ARNOLD LLP
19

20
                                         By _____
21                                              Rebecca A. Hull

22                                       Attorneys for Defendant
                                         Kaiser Permanente Flexible Benefits Plan
23

24

25

26

27

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP   28

-1-                 CASE NO. C 07-03853 (VRW)
DEFENDANT'S NOTICE OF MOTION & MOTION FOR SUMMARY JUDGMENT AND MPA ISO THEREOF

1

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

2      Plaintiff Donald Gracey ("Plaintiff" or "Gracey') worked as a Project Manager for the

3  Kaiser Foundation Health Plan, Inc. ("KFHP"), a light duty job.  His job duties were not taxing,

4  and involved approximately five to six hours per day sitting at a desk.  Gracey's last day at work

5  was January 18, 2006.  He filed a claim for Long Term Disability ("LTD") benefits under the

6  Plan on April 28, 2006.  His claim asserted that he was disabled from working in his own

7  occupation.

8      The LTD Plan's benefits are funded through a group policy of insurance issued by

9  Metropolitan Life Insurance Company ("MetLife"), which is also the claim administrator.  The

10  Plan confers discretionary authority on MetLife to interpret the terms of the Plan, and to

11  determine eligibility for benefits.

12      Gracey originally alleged he was unable to work because stress, diabetes, a heart

13  condition and depression kept him from performing his job duties.  The elimination period under

14  the Plan is six months, beginning the first day of the disability (that is, the participant must be

15  totally disabled for six continuous months before any benefits are payable).  Because Gracey was

16  not disabled throughout the elimination period, he was not entitled to benefits.

17      The medical records Gracey submitted to support his claim were reviewed by two

18  independent board certified physicians, one board certified in internal medicine with a specialty

19  in cardiology, and the other a board certified neurologist.  Both opined that Gracey did not have a

20  condition that functionally precluded him from performing his occupation as a Project Manager.

21  Gracey's claim and appeal for benefits was denied, because he failed to substantiate his claim

22  through medical information establishing a condition that rendered him totally disabled under the

23  Plan.

24      Gracey now sues under the Employee Retirement Income Security Act of 1974

25  ("ERISA"), 29 U.S.C. section 1001, *et seq*., alleging that MetLife as claim administrator abused

26  its discretion in denying his claim.  However, the evidence in the Administrative Record shows

27  that the denial was not an abuse of discretion, and that Gracey is not entitled to the benefits he

28  seeks.  The Plan therefore requests that the Court grant its motion for summary judgment, and

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

DEFENDANT'S NOTICE OF MOTION & MOTION FOR SUMMARY JUDGMENT AND MPA ISO THEREOF

1    enter judgment for the Plan.

2    **II.    STATEMENT OF FACTS**

3         Gracey participated in the Plan through his employment with KFHP, where he performed

4    sedentary job duties as a Project Manager. (ADMIN 790-791)[1] The following facts are set forth

5    in the Administrative Record lodged herewith.

6         **A.    LTD Benefits Under the Plan**

7         The Plan provides LTD benefits that are funded through a group policy of insurance

8    issued by MetLife. (ADMIN 14-50) For employees such as plaintiff who were under age 60 at

9    the time they allegedly became disabled, the Maximum Benefit Duration under the Plan for LTD

10   benefits is to age 65. (ADMIN 22)

11        Plan participants are entitled to receive LTD benefits if they are "Disabled" as that term is

12   defined in the Plan, and became "Disabled" while covered under the Plan. (ADMIN 26) The

13   Plan defines "Disabled" in pertinent part as follows:

14        "Disabled" or "Disability" means that, due to sickness, pregnancy or accidental
         injury, you are receiving Appropriate Care and Treatment from a Doctor on a
15       continuing basis; and

16       (1) during your Elimination Period and the next 24 month period, you are unable
         to earn more than 80% of your Predisability Earnings or Indexed Predisability
17       Earnings at your Own Occupation for any employer in your Local Economy; or

18       (2) after the 24 month period, you are unable to earn more than 60% of your
         Indexed Predisability Earnings from any employer in your Local Economy at any
19       gainful occupation for which you are reasonably qualified taking into account
20       your training, education, experience and Predisability Earnings.

21       . . .

22       "Own Occupation" means the activity that you regularly perform, as determined
         by the Employer, and that serves as your source of income. . . . Own Occupation is
23       not limited to the specific position you held with your Employer. It may be a
         similar activity that could be performed with your Employer or any other
24       employer.

25

26   _____

27   [1] Pages of the Administrative Record applicable to plaintiff's attempt to recover benefits
     under the Plan are referenced by prefix "ADMIN" followed by the page number(s). *See*
28   Declaration of Margaret Calderon, filed herewith.

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

1  (ADMIN 27-28)

2  The "Elimination Period" for LTD benefits eligibility is 180 days of continuous

3  Disability. (ADMIN 22, 27) The Elimination Period "begins on the day you become Disabled.

4  It is a period of time during which no benefits are payable." (ADMIN 27) Monthly LTD

5  benefits under the Plan begin to accrue on the date following the day the participant completes

6  the Elimination Period. (ADMIN 26) Monthly LTD benefits may end for a variety of reasons,

7  such as when the participant is no longer Disabled, or reaches the Maximum Benefits Duration,

8  or fails to provide required information. (ADMIN 26-27)

9  The Plan sets forth procedures for making benefit claims, including procedures for the

10 submission of claims, determinations approving or denying claims, review of claims that have

11 been denied in whole or in part, and information regarding a participant's rights under ERISA.

12 (ADMIN 39-41; 48-50)

13 The umbrella plan document, entitled "Kaiser Permanente Welfare Benefits Plan,"

14 conclusively demonstrates that the Plan confers discretion on MetLife. (ADMIN 7) The Kaiser

15 Permanente Welfare Benefit Plan document states, in pertinent part:

16     4.1    Named Fiduciaries. The named fiduciaries with respect to each Plan, for
   purposes of ERISA, shall be the Employers whose employees participate in such
17     Plan. With respect to each Program in which benefits are provided under a
   Contract in which the Insurer is responsible for review of the benefit claim
18     determination, such Insurer is the named fiduciary with respect to such
19     determinations, pursuant to ERISA Regulation § 2560.503-1(g)(2).

20     4.2    Allocation and Delegation of Fiduciary Responsibility.

21     a.    Each named fiduciary is allocated fiduciary responsibility with respect to
   the specific discretionary authority exercised by it, under the Contract(s) relating
22     to the Program(s) in which such Named Fiduciary participates.

23     4.3    Discretionary Authority of Fiduciaries. Each named Fiduciary . . . shall
   have full and complete authority with respect to its responsibilities under the Plan
24     and any Program hereunder. All actions, interpretations, and decisions of a
25     National Fiduciary . . . shall be conclusive and binding on all personas and shall
   be given the maximum possible deference allowed by law.
26
   (ADMIN 7)
27
   The Programs covered by the Kaiser Permanente Welfare Benefit Plan document are
28

those set forth in Appendix A to the Kaiser document. (ADMIN 13) Appendix A identifies

SEDGWICK
DETERT, MORAN & ARNOLD LLP

1 "Metropolitan Life Insurance Company Contract 95910, 95911" as a benefit plan covered by this

2 document. (*Id*.) The Certificate of Insurance issued under the group contract specifically sets

3 forth the Group Policy under which the Certificate is issued as "Group Policy No.: 95910-G."

4 (ADMIN 16)

5 The plan document entitled "Your Employee Benefit Plan, Kaiser Foundation Health

6 Plan, Inc. Long Term Disability Benefits," also specifically grants MetLife discretionary

7 authority to make claim decisions, as follows:

8 > In carrying out their respective responsibilities under the Plan, the Plan
> administrator and other Plan fiduciaries shall have *discretionary authority to*
9 > *interpret the terms of the Plan* and to *determine eligibility for and entitlement to*
> *Plan benefits* in accordance with the terms of the Plan. Any interpretation or
10 > determination made pursuant to such discretionary authority shall be given full
> force and effect, unless it can be shown that the interpretation or determination
11 > was arbitrary and capricious.

12
13 (ADMIN 49 [emphasis added])

14 The same Plan document also identifies MetLife as a Plan fiduciary, providing: (1) when

15 a LTD claim is submitted, the claimant's employer will forward the claim form to MetLife; (2) if

16 there is any question about a claim payment, an explanation may be requested from MetLife

17 through the claimant's employer or by direct contact with the claimant's MetLife Group

18 Disability claim office; and (3) when a claimant appeals a denial of a claim, MetLife will re-

19 evaluate the claim decision and decide the appeal. (ADMIN 49)

20 MetLife, the claim administrator, determined in its discretion that plaintiff was not

21 disabled under the terms of the Plan, and therefore was not eligible for LTD benefits under the

22 Plan. The Plan documents expressly identify MetLife as the entity charged with making such

23 decisions. (ADMIN 16-17, 49-50)

**B.     Chronological Summary of Claim**

24
25 1.     Gracey's Employment with KFHP

26 Gracey worked as a Project Manager at KFHP, a light duty position. (ADMIN 790-791)

27 His job as Project Manager involved sedentary duties including sitting approximately 5-6 hours

28 per shift and occasionally lifting up to 20 pounds. (*Id*.) Gracey's supervisor stated in the

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

1  Disability Claims Supervisor Statement that Gracey's job did not require bending, twisting,
2  climbing, reaching, crouching, kneeling or balancing or to be around moving equipment and/or
3  machinery. (*Id.*)

4    2.    Gracey's April 28, 2006 Claim for LTD Benefits

5    Gracey filed his claim for LTD benefits on April 28, 2006. (ADMIN 802) He claimed
6  that stress, diabetes, a heart condition and depression kept him from performing his job. (*Id.*) His
7  last day worked was January 18, 2006, and his alleged disability began January 19, 2006. (*Id.*)

8    On April 26, 2006, MetLife, the claim administrator, mailed Gracey a letter requesting
9  information about his claim, including a request for a statement from his attending physician, a
10  statement from Gracey about his condition, a job description, a statement from Gracey's
11  supervisor about the nature of Gracey's duties, state disability and workers' compensation
12  documentation, and information about his medications. (ADMIN 806) The letter advised Gracey
13  he had until May 24, 2006, to complete and return the forms to MetLife. (*Id.*) Gracey failed to
14  provide MetLife with the Attending Physician Statement ("APS") by the May 24 deadline,
15  effectively abandoning his claim. (ADMIN 52) Nonetheless, MetLife reopened the claim so that
16  Gracey could submit, and MetLife could review, the APS prior to making a decision. (ADMIN
17  52-53; 788)

18    Gracey called MetLife on June 5, 2006, and asked whether MetLife had received his
19  APS. (ADMIN 52) MetLife advised that it had received the APS and Gracey's medical records,
20  and that it would engage in a review process, after which a decision letter would be sent to him.
21  (*Id.*) Gracey acknowledged he understood the status of the claim. (ADMIN 52-53)

22    On June 9, 2006, a Nurse Consultant reviewed Gracey's entire claim file, including the
23  medical documentation, determining that there was insufficient medical information to support
24  his claim that he was unable to perform his own occupation. (ADMIN 55-56) The Nurse
25  Consultant then tried to contact Gracey's physician to inquire if there was any further medical
26  information MetLife should consider before making a final determination. (ADMIN 56)

27    On June 13, 2006, MetLife requested a copy of Gracey's medical and psychiatric file as
28  part of the claim review process. (ADMIN 56; 734-735; 752-753) MetLife also received and

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

1  reviewed recent medical information in relation to a June 9, 2006, doctor's appointment.

2  (ADMIN 57) On June 21, 2006, additional medical records were transmitted to MetLife.

3  (ADMIN 736-787)

4      By July 21, 2006, the Nurse Consultant had reviewed the medical portion of Gracey's

5  file and had referred the file to a clinical psychiatric professional to review that portion of the

6  claim. (ADMIN 59) On July 21, 2006, the Clinical Psychiatric Consultant called the Kaiser

7  Mental Health Department, where Gracey was being treated, and left a voice mail for Gracey's

8  psychologist asking some specific questions about Gracey's condition. (ADMIN 59) On July

9  24, Gracey's psychologist called back and reported that Gracey's doctors had not diagnosed him

10  as disabled based upon psychiatric reasons. (ADMIN 60) The Psychiatric Consultant then

11  reviewed Gracey's claim file and, thereafter, opined that Gracey was not disabled based on his

12  psychiatric condition. (*Id.*)

13      On July 27, 2006, MetLife, based on a review of Gracey's entire file, denied the claim

14  because neither the medical nor the psychiatric information substantiated Gracey as disabled.

15  (ADMIN 61, 727-31) Gracey was notified in writing by MetLife of the denial of his claim, and

16  informed of his appeal rights. (ADMIN 729-731) On August 2, 2006, the MetLife Case Manager

17  returned a call to Gracey and explained why his claim had been denied. (ADMIN 61-62)

18         3.   Attending Physician's Further Statement in August 2006, Submission of
Additional Medical Documents, and Reconsideration of Gracey's Claim

19

20      On August 3, 2006, Gracey ordered more of his medical records be sent to MetLife for

21  review. (ADMIN 62) MetLife agreed to reopen the claim and review the additional records.

22  (ADMIN 62-64) On August 7, 2006, Gracey's attending physician, Dr. Mark Hlavac, sent a

23  letter to MetLife conclusorily opining that Gracey "is unable to work as a project manager for

24  any company or corporation due to stress and the affect [sic] that it has on his chronic

25  conditions." (ADMIN 723)

26      Dr. Hlavac provided no new objective medical data to support this generalized opinion.

27  (*Id.*) However, MetLife agreed to review the updated medical information and reconsider the

28  claim and on August 23, 2006, MetLife received additional medical records. (ADMIN 63, 491-

**SEDGWICK**
DETERT, MORAN & ARNOLD...

1   722) MetLife then reviewed Gracey's claim file again, including the additional medical records
2   submitted on August 23, 2006. (ADMIN 65-66) On September 6, 2006, MetLife again denied
3   Gracey's claim because the additional medical documentation did not support Gracey's claim
4   that he was functionally disabled by coronary atherosclerosis, sleep disturbance and high blood
5   pressure, and did not substantiate that he was disabled. (ADMIN 489-490) Gracey was notified
6   again, in writing, about his appeal rights and about the appeal process. (ADMIN 490) On
7   September 12, 2006, MetLife called Gracey and explained the reasoning for the denial, in
8   addition to answering questions about the appeal process. (ADMIN 67)

9                   4.      Gracey's Appeal of the September 6, 2006 Denial of LTD Benefits

10         On September 12, 2006, Gracey appealed MetLife's denial of LTD benefits. (ADMIN 67
11   & 487-486) Gracey engaged counsel to represent him during the appeal, and his counsel sent a
12   letter to MetLife on October 5, 2006, indicating that they would submit additional medical
13   documentation to support the appeal. (ADMIN 475-480) MetLife responded that it would not
14   review Gracey's appeal until all of the additional medical information was received by MetLife.
15   (ADMIN 474) MetLife provided Gracey an additional 180 days to submit the supplemental
16   medical information. (*Id.*)

17                   5.      October 16, 2006 Complaint to the California Insurance Commissioner

18         On October 6, 2006, Gracey filed a complaint against MetLife with the California
19   Insurance Commissioner ("Insurance Commissioner") complaining that MetLife had not
20   approved his claim for Plan benefits. (ADMIN 344-345) On October 17, 2006, the Insurance
21   Commissioner sent MetLife a letter and asked it to reevaluate Gracey's claim within 21 days, and
22   demanding a copy of the claim file. (ADMIN 342-343) MetLife responded to the Insurance
23   Commissioner, explaining that Gracey's claim had been denied and was in the appeal process.
24   (ADMIN 71-72, 334) In addition to sending a copy of the entire claim file to the Insurance
25   Commissioner, MetLife also sent a copy to Gracey's attorney. (ADMIN 71-73, 332, 325)
26   MetLife kept the Insurance Commissioner informed on a monthly basis about the status of
27   Gracey's appeal throughout the appeal process. (ADMIN 332, 325, 323, 319, 301, 252, 141,
28   130, 114, 96) The Insurance Commissioner took no action on Gracey's complaint.

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

6.  In February 2007, Gracey Appointed New Counsel and Submitted More Medical Documents to Support His Claim

On February 1, 2007, Gracey retained new counsel, but had not yet submitted additional medical information. (ADMIN 316, 319, 323) Although MetLife provided a copy of the complete claim file to Gracey's prior attorneys and to the Department of Insurance, Gracey's new attorney demanded MetLife provide another copy. (ADMIN 316-317) On March 6, 2007, MetLife sent a copy of Gracey's entire file to his new attorney. (ADMIN 76, 261)

On February 27, 2007, Gracey's attorney submitted: (1) a letter in support of Gracey's appeal; (2) additional medical documentation from Gracey's physicians, Dr. Samuel Sobol and Dr. Mark Hlavac; (3) a declaration from Gracey; and (4) a letter from Gracey's prior attorney. (ADMIN 262-299) On March 8, 2007, Gracey's attorney telephoned MetLife to request a delay in processing Gracey's appeal so he could review the claim file. (ADMIN 216) MetLife agreed. to do so. (ADMIN 79, 261) The attorney also clarified that Gracey was not seeking LTD Plan benefits based on his psychiatric condition. (ADMIN 261) MetLife noted in conversation with Gracey's attorney that Gracey had submitted very little documentation regarding his cardiac condition from January 18, 2006, through March 2007, and therefore requested that additional information be submitted. (ADMIN 79, 258) On April 20, 2007, Gracey's attorney submitted extensive additional medical documentation in support of Gracey's appeal. (ADMIN 148-250)

7.  Gracey's Entire File Was Reviewed by Two Independent Physician Consultants, Board Certified in Internal Medicine and Neurology

MetLife reviewed Gracey's entire claim file, which included all of the above information and documentation. (ADMIN 81-82) As part of MetLife's review, two Independent Physician Consultants ("IPC"), Hitesh Patel, M.D., who is board certified in internal medicine with a subspecialty certificate in cardiovascular disease (ADMIN 134-137), and Joseph Jares, M.D., who is board certified in neurology, reviewed Gracey's entire claim file and provide their expert medical opinions. (ADMIN 138-140)

8.  Dr. Patel, Board Certified Internist with a Subspecialty in Cardiovascular Disease Opined That Gracey Was Not Functionally Impaired

Upon review of Gracey's file, including all medical records, Dr. Patel advised that Gracey

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

DEFENDANT'S NOTICE OF MOTION & MOTION FOR SUMMARY JUDGMENT AND MPA ISO THEREOF

1   performed well on his most recent treadmill stress test and that the documentation from January

2   14, 2005, indicated that he had exercised to stage IV of the Bruce protocol and had an ejection

3   fraction of around 50%. (ADMIN 134-137) Based upon all the information in Gracey's claim

4   file, Dr. Patel concluded that Gracey was stable, did not have any limitations, and was fully

5   functional. (*Id.*) Specifically, Dr. Patel noted that Gracey was not having episodes of unstable

6   angina. (*Id.*) Dr. Patel also noted that Gracey had a stress test on September 13, 2006, which

7   demonstrated no profusion abnormalities and an ejection fraction of 50% with no evidence of

8   active ischemia, congestive heart failure, bradyarrhthmias or trayarrhtmias, and with overall

9   normal physical examinations and a stable clinical course. (*Id.*) Dr. Patel found no indication

10  that Gracey was unable to work, and no indication of any functional limitations from an internal

11  medicine and cardiological perspective. (*Id.*) Dr. Patel, therefore, opined that Gracey could work

12  without restrictions. (*Id.*)

13          9.      Dr. Jares, a Board Certified Neurologist, Opined That Gracey Was Able to
                    Perform Sedentary to Light Duty Work
14

15          Dr. Jares also reviewed Gracey's complete claim file. Dr. Jares reported that Gracey's

16  medical records "do support that Mr. Gracey may perform sedentary-to-light work." (ADMIN

17  139) Dr. Jares attempted to conduct a telephone conference with Dr. Hlavac about Gracey on

18  May 6 and 8, 2007, but Dr. Hlavac did not respond. (*Id.*)

19          10.     Metlife Sent Dr. Patel's and Dr. Jares' Reports to Gracey's Counsel for
                    Review and Response by Gracey's Treating Physicians
20

21          MetLife sent Gracey's attorney copies of Dr. Patel's and Dr. Jares' reports for review and

22  comment by Gracey's physicians. (ADMIN 124) In response, Dr. Hlavac challenged Dr. Patel's

23  conclusions and provided further information for MetLife's consideration. (ADMIN 118)

24  Specifically, Dr. Hlavac suggested that Dr. Patel's report failed to address Gracey's bouts of

25  chest pain and episodes of angina, made worse by Gracey's then-current line of work as a project

26  manager, including the alleged stress the work caused Gracey. (ADMIN 112 and 118)

27          Dr. Patel, on receiving Dr. Hlavac's comments, responded that the additional information

28  received from Dr. Hlavac did not alter Dr. Patel's previous opinion that Gracey was able to work.

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

1    (ADMIN 112-113)  Dr. Patel based his assessment of and response to Dr. Hlavac's statements on

2    Dr. Patel's review of the objective information in the medical records, including: (1) results of an

3    exercise stress test during which Gracey was monitored as he exercised for up to fourteen

4    seconds at level IV on a Bruce protocol, registering a heart rate of 124 at 10 MET; and (2) the

5    absences of additional reports that Gracey had suffered any further episode of underlying

6    significant angina.  (*Id.*)  Dr. Patel opined that Gracey's file continued to lack sufficient clinical

7    medical evidence of functional impairment from July 17, 2006, and beyond to support his

8    claimed inability to work in his occupation.  (ADMIN 112-113, 134-137)

9        With respect to Dr. Jares' opinion, Dr. Hlavac responded on June 7, 2007, that in his

10   opinion, Dr. Jares failed to acknowledge that Gracey was treated for seizure onset and placed on

11   Valpornic acid, and that a side effect of Valpornic acid is fatigue.  (ADMIN 118)  Dr. Hlavac

12   opined that Gracey's conditions are chronic and exacerbated by stress in his work as a project

13   manager and that he was not capable of continuing his job due to the stress, and due to its

14   physical requirements.  (*Id.*)  Dr. Jares, on reviewing Dr. Hlavac's comments, responded that

15   Gracey was treated for possible seizures after falling off a ladder, and was diagnosed with

16   migraine headaches by Dr. Cutland in 2005.  (ADMIN 107-108)  Dr. Jares stated that while he

17   was not sure who prescribed Depakote, many individuals with migraine headaches and seizure

18   disorders who take Depakote continue to be very productive in the work place.  (*Id.*)  Dr. Jares

19   reported that there was no indication of any documented clinical signs of toxicity from Depakote,

20   such as tremor, ataxia, nystamus, or any subjective symptoms such as diplopia, nausea, vomiting

21   or sedation.  (*Id.*)  Dr. Jares opined that Gracey retained the ability to work with appropriate

22   safety precautions, such as avoiding hazardous equipment and heights.  (*Id.*)

23        11.    Metlife Reviewed the File to Determine Whether Gracey Had Reported
                 Medication Side Effects That Disabled Him from His Own Occupation.
24

25        In light of Dr. Hlavac's comments in response to the IPC reports, MetLife analyzed

26   Gracey's file to determine whether he reported medication side effects that prevented him from

27   performing his own occupation.  (ADMIN 86)  After review, the MetLife noted Gracey had

28   reported symptoms of ongoing fatigue since April 2006.  (ADMIN 87)  MetLife noted the

**SEDGWICK**
DETERT, MORAN & ARNOLD<sub>LLP</sub>

1  opinions of Dr. Hlavac, about fatigue and side effects from medication (ADMIN 87), and asked
2  Dr. Jares to address the issue of fatigue. (ADMIN 107-108)  Dr. Jares specifically addressed this
3  issue in his June 27, 2007, addendum report in which he opined that fatigue and side effects did
4  not prevent Gracey from performing his own occupation. (ADMIN 107-108)

5         12.    July 5, 2007, Determination on Appeal Upholding the Claim Denial

6         Under the Plan, Gracey had the duty to establish that he was unable to perform the duties
7  of his own occupation based upon his assertedly disabling medical conditions.  (ADMIN 26-28)
8  MetLife performed multiple thorough reviews of Gracey's initially submitted records and also
9  received and analyzed voluminous supplemental in connection with Gracey's appeal. MetLife
10 reopened the original claim several times so that Gracey could submit additional medical
11 documentation for review. MetLife referred Gracey's entire file, including the supplemental
12 medical documentation, to two IPCs who are board certified, respectively, in internal medicine
13 with a specialty in cardiology; and neurology.

14         MetLife then provided the IPCs' reports to Gracey's attorney for comment by the treating
15 physicians. MetLife credited the opinions of Gracey's attending physicians, where they were
16 supported. MetLife submitted the responses from Gracey's physicians to Drs. Patel and Jares to
17 review, and asked them to explain whether their opinions were changed by the responses from
18 Gracey's physicians.  In the circumstances, MetLife acted appropriately and reasonably in
19 crediting the opinions of Drs. Patel and Jares in adjudicating Gracey's claim.

20         At the conclusion of this exhaustive review of Gracey's entire file, MetLife determined
21 that Gracey was not "disabled" under the Plan, and therefore, upheld the denial of Plan benefits.
22 (ADMIN 101-105)  In the circumstances, that determination was not an abuse of discretion, but
23 was rationally supported by the complete administrative record.

24 **III.    ARGUMENT**

25         **C.    The Denial Was Not an Abuse of Discretion**

26                1.    Abuse of Discretion Review Applies

27         Defendant understands that Gracey will contend that the denial of his claim should be
28 reviewed by this Court *de novo.* He is incorrect. The Plan language confers discretionary

SEDGWICK
DETERT, MORAN & ARNOLD LLP

1    authority on the claim administrator, MetLife, to construe the terms of the Plan and make the
2    benefits determination at issue in this action. (ADMIN 7, 49) Where, as here, a plan confers
3    discretionary authority, the standard of review is abuse of discretion. *Firestone Tire & Rubber*
4    *Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948 (1989).

5        In *Abatie v. Alta Health & Life Ins. Co.*, 458 F. 3d 955 (9th Cir., 2006), the Ninth Circuit
6    rejected case law which had shifted the standard of review to *de novo* when a plaintiff presented
7    evidence that the fiduciary had a so-called serious conflict of interest. "*Firestone* appears to
8    provide only two alternatives. When a plan confers discretion, abuse of discretion review
9    applies; when it does not, de novo review applies." *Id.* at 965. "Abuse of discretion review
10   applies to a discretion-granting plan even if the administrator has a conflict of interest." *Id.*

11       *Abatie* recognizes one exception, and holds that "when a plan administrator's actions fall
12   so far outside the strictures of ERISA that it cannot be said that the administrator exercised the
13   discretion that ERISA and the ERISA plan grant, no deference is warranted." *Id.* at 972*; see also*
14   *id.* at 971 (requiring "wholesale and flagrant violations of the procedural requirements of
15   ERISA" and actions in "utter disregard of the underlying purpose of the plan" to shift the
16   standard of review to de novo). However, *Abatie* also holds that the standard of review would
17   shift to *de novo* only in a "rare class of cases" and not in "the more ordinary situation in which a
18   plan administrator has exercised discretion but, in doing so, has made procedural errors." *Id.*

19       Here, it cannot be disputed that the Plan confers discretionary authority [*see* ADMIN 7,
20   49], and nothing in the record suggests any violations (much less "wholesale" or "flagrant"
21   violations) of the procedural requirements of ERISA. Rather, Gracey was given numerous
22   opportunities to present evidence to support his claim, was advised of his rights and the bases for
23   the denial, and his file was reviewed by independent board certified physicians in appropriate
24   specialties.

25       Indeed, Gracey had legal representation from the inception of his appeal and throughout
26   the appeal process, and MetLife accorded his attorneys numerous extensions of time to submit
27   voluminous supplemental information, and then considered that information. Following

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP
28   Gracey's complaint to the California Insurance Commissioner, MetLife sent the Insurance

1  Commissioner a copy of Gracey's claim file and on a monthly basis kept the Insurance
2  Commissioner apprised of the status of Gracey's appeal. The determination should be reviewed
3  for abuse of discretion.

4          2.     The Decision Should Be Afforded a High Degree of Deference

5      *Abatie* holds that the Court has discretion to determine how much deference to afford a
6  claim decision. "A district court, when faced with all the facts and circumstances, must decide in
7  each case how much or how little to credit the plan administrator's reason for denying insurance
8  coverage." *Id.* at 968.

9      Here, the Court should afford a high degree of deference to the Plan's determination for
10  several reasons. While it is true that MetLife both issued the policy of insurance that funds the
11  benefits at issue, and in its capacity as claim administrator also made the benefit determination at
12  issue, the procedure and manner in which the claim was administered belie arguments of
13  allegedly improper motivation. The claim was administered in compliance with ERISA, and
14  Gracey was afforded a full and fair review of the decision. Gracey's attorneys frequently
15  communicated with MetLife during the appeal process, and never contended that MetLife
16  violated any of ERISA's requirements. The California Insurance Commissioner received a copy
17  of Gracey's file, and was kept up to date on a monthly basis about the status of the appeal.
18  Gracey was afforded many opportunities to submit additional medical evidence (and did so), and
19  was provided multiple extensions of time to provide further medical evidence. The adjudication
20  of his claim included multiple reviews of the record, and addressed all evidence submitted.

21      The Plan was entitled to credit the medical opinions of a board certified internist with a
22  specialty in cardiology, and a board certified neurologist, each of whom reviewed the medical
23  records and opined that Gracey's medical issues did not limits his functionality such as to make
24  him incapable of performing his own occupation. Gracey's attending physicians received copies
25  of the board certified IPCs' reports, and challenged their opinions. The board certified specialists
26  fully considered Gracey's attending physicians' comments, in reaching their ultimate opinions
27  regarding Gracey's level of functional impairment.

28      The Plan anticipates that Gracey will contend that the benefit denial should not be

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

1     afforded a high degree of deference for the unremarkable reason that the two board certified IPCs

2     who reviewed his medical records were compensated for their services. ERISA regulations

3     *require such reviews*. *See* 29 C.F.R. § 2560-503-1(h)(3)(iii), (4). It is axiomatic that physicians

4     who perform medical reviews must be compensated for their services. Moreover, the argument

5     that they were allegedly improperly influenced as their opinions by the fact that they were paid is

6     belied by the fact that the opinions of both IPCs were strikingly similar to those stated in the

7     contemporaneous records of Gracey's treating physicians, Dr. Hlavac and Dr. Sobol. The fact

8     that the IPCs were compensated (just as Gracey compensated Dr. Hlavac and Dr. Sobol for their

9     medical services to him) is not a basis for affording less deference to the claim decision.

10            **D.**     **The Record Shows That Gracey Was Not Disabled Under the Plan**

11               1.     Gracey Failed to Provide Sufficient Evidence of Functional Impairment

12          Defendant does not dispute that Gracey had several medical conditions. However, the

13     bare fact that a Plan participant has developed health issues does not establish his eligibility for

14     benefits under the Plan. Rather, a participant's medical condition must result in functional

15     impairments sufficient to render him "Disabled" under the Plan.

16          The medical evidence submitted by Gracey, his physicians and his attorneys failed to

17     establish that Gracey was functionally impaired from performing his own occupation throughout

18     and after the elimination period. As a result, he did not meet the Plan's definition of disability

19     and was not entitled to benefits under the Plan. It is undisputed that Gracey's position of project

20     manager was one that involved five to six hours of sitting per day. (ADMIN 790-791) His

21     supervisor reported that the job did not require bending, twisting, climbing, crouching, kneeling

22     or balancing or proximity to moving equipment and/or machinery (*Id.*) Only occasionally did

23     Gracey have to lift up to 20 pounds, and he never had to lift more than 20 pounds. (*Id.*).

24          Although Gracey's attending physician made conclusory statements that Gracey was

25     disabled, such statements had little probative value absent supporting medical evidence, and

26     MetLife was not required to credit them in light of the IPCs' assessments that Gracey was not

27     precluded from performing the actual duties of his occupation. For instance, in *Bratton v.*

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP
28     *Metropolitan Life Ins. Co.*, 439 F. Supp.2d 1039 (C.D. Cal. 2006), like here, "Bratton's own

1 doctors were equivocal as to whether Bratton's condition prevented him form performing a

2 sedentary occupation." *Id*. at 1053. Denial of benefits in those circumstances is not an abuse of

3 discretion. *Id*. at 1054.

4        Here, it is telling that Dr. Hlavac did not directly dispute Dr. Patel's or Dr. Jares'

5 opinions. Rather, he simply opined that Gracey was not capable of continuing his job duties due

6 to the stress and physical symptoms they allegedly brought on. (ADMIN 119)   Reliance on such

7 conclusory statements is not sufficient to avoid a finding that the denial of Gracey's claim was

8 not an abuse of discretion. For instance, the *Bratton* court reasoned:

9        [T]his is not a case where MetLife has required objective evidence of a
         disability. . . . Rather, here MetLife required objective proof that Bratton could
10       not substantially perform his occupation, not proof of his illness. The Court does
         not find this an unreasonable or arbitrary interpretation of the Plan's
11       requirements. . . . The Court finds MetLife's denial of benefits and findings that
         the information provided does not support "the restrictions and limitations which
12       would prevent you from performing the duties of a sedentary occupation" . . . is
13       neither arbitrary nor capricious.

14 *Id*. at 1052-53 (citation omitted), relying on *Jordan v Northrop Grumman Corp Welfare Benefit*

15 *Plan*, 63 F. Supp. 2d 1145 (C.D. Cal. 1999), *aff'd*, 370 F. 3d 869 (9th Cir. 2004) (*see Bratton*,

16 439 F. Supp.2d at 1049-50). The Ninth Circuit in *Jordan* held that it was proper for a plan to

17 reject a conclusory statement by a plaintiff's physician to the effect that she was totally disabled,

18 given that the actual medical evidence did not show that her medical condition functionally

19 impaired her from working. In so holding, the Ninth Circuit observed, "Jordan's evidence that

20 she was disabled was slight, and its reliability was questionable. . . . Jordan asks us to accept a

21 more conclusory remark without any explanation is much more easily characterized as arbitrary

22 than what the administrator did." *Jordan*, 370 F. 3d at 882.

23        Here, the Plan contains a similar definition of total disability to the plan in *Bratton*,

24 requiring evidence that a claimant is unable to perform the important duties of his occupation.

25 (ADMIN 26-28) Here, as in *Bratton*, Gracey's own doctor, Dr. Hlavac, was equivocal about

26 Gracey's ability to perform the functions of his light duty job. (ADMIN 119, 774, 778-779)

27 Although Gracey's doctor supported his application with conclusory statements that Gracey was

28 totally disabled, as in *Jordan*, the records provided other evidence indicating that Gracey was

**SEDGWICK**
DETERT, MORAN & ARNOLD

1    capable of performing the duties of a light duty job. As in *Bratton* and *Jordan*, summary

2    judgment upholding the denial of benefits is warranted here, because Gracey did not establish

3    that he was functionally impaired from performing his occupation, which was his burden. *See*

4    *Jordan v Northrop Grumman Corp Welfare Benefit Plan*, 63 F. Supp. 2d at 1157. *See also*

5    *Martin v. Continental Cas. Co.*, 96 F.Supp.2d 983, 994 (N.D. Cal. 2000) (summary judgment for

6    defendant: "Martin has admitted that he is capable of a range of activities encompassing his

7    sedentary job; the fact that those activities cause him subjective (or even medically objective)

8    pain does not bring it to the level of a disability"). MetLife and the Plan were entitled to credit

9    the opinions of the board certified IPCs rather than conclusory assertions of Gracey's doctors.

10   As discussed in *Semien v. Life Ins. Co. of North America*, 436 F. 3d 805 (7th Cir. 2006):

11   > The reports by the physicians LINA hired to review Semien's claim demonstrate a
     > thorough consideration of the available information. These physicians found
12   > Semien capable of activities that would disqualify her from long-term disability
     > coverage. Although Semien's treating physicians reached different conclusions as
13   > to her abilities, under an arbitrary and capricious review, neither this Court, nor
14   > the district court, will attempt to make a determination between competing expert
     > opinions. Instead, an "insurer's decision prevails if it has rational support in the
15   > record."

16   *Id.* at 812 (quoting *Leipzig v. AIG Life Ins. Co.*, 362 F. 3d 406, 409 (7th Cir. 2004)). Similarly

17   here, Gracey's subjective report that he experiences pain because five to six hours per day of his

18   job duties consisted of sitting, does not establish that he is functionally impaired and therefore

19   disabled under the Plan.

20       2.      The Plan Was Entitled to Credit the Opinions of the Board Certified IPCS

21       The Plan anticipates that Gracey will contend that the claim administrator was required to

22   accept conclusory statements of his physicians offered in support of his claim, and was not

23   permitted to credit expert opinions of two board certified IPCs who had appropropriate areas of

24   specialization. Such arguments are contrary to ERISA as interpreted by the Supreme Court: "We

25   hold that plan administrators are not obligated to accord special deference to the opinions of

26   treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003).

27   > [C]ourts have no warrant to require administrators automatically to accord special
     > weight to the opinions of a claimant's physician; nor may courts impose on plan
28   > administrators a discrete burden of explanation when they credit reliable evidence

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

SF/1476446v1                                    -17-                    CASE NO. C 07-03853 (VRW)

DEFENDANT'S NOTICE OF MOTION & MOTION FOR SUMMARY JUDGMENT AND MPA ISO THEREOF

1       that conflicts with a treating physician's evaluation.

2   *Id.* at 834.

3       Similarly, *Hunt v. Metropolitan Life Ins. Co.*, 425 F. 3d 489 (8th Cir. 2005) upheld

4   summary judgment in favor of defendants where LTD benefits were denied based on two

5   physician medical reviews that contradicted conclusions of the plaintiff's treating doctor. *Hunt*

6   recognized that the treating physician opined that a plaintiff was disabled, but held that MetLife

7   "was nevertheless entitled to rely on the opinions of two reviewing physicians who gave contrary

8   opinions" and "did not abuse its discretion in denying Hunt LTD benefits." *Id.* at 490-491.

9       On appeal, Gracey's file was supplemented several times with extensive medical

10  information submitted by his attorneys. MetLife granted Gracey various extensions of time

11  during the appeal process so that he could submit more medical information. Dr. Patel and Dr.

12  Jares opined that Gracey's various medical conditions were not of a degree such as to preclude

13  him from performing the duties of his position as a Project Manager. As in *Hunt*, MetLife was

14  entitled to credit the medical opinions of Drs. Patel and Jares. MetLife did not abuse its

15  discretion in crediting the opinions of theIPCs, and its claim determination should be upheld by

16  the Court. The Plan therefore is entitled to judgment in its favor.

17  **IV.    CONCLUSION**

18      The medical records submitted by Gracey did not establish that he was functionally

19  unable to work as a Project Manager. Therefore, Gracey failed to prove his claim for LTD

20  benefits under the Plan, and it was not an abuse of discretion for the Plan's claim administrator to

21  deny his claim. Consequently, the Plan requests that the Court grant its motion for summary

22  judgment and enter judgment in its favor.

23  Dated: January 10, 2008              SEDGWICK, DETERT, MORAN & ARNOLD LLP

24

25

26  By _____
                    Rebecca A. Hull

27

28  Attorneys for Defendant
    KAISER PERMANENTE FLEXIBLE BENEFITS
    PLAN

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP