MICHAEL E. KINNEY
California Bar No. 77018
LAW OFFICE OF MICHAEL E. KINNEY
438 First St.
Fourth Floor
Santa Rosa, CA 95401
(707) 527-4141
Fax (707) 579-9561
email: kinney@kinnlaw.com

Attorney for Plaintiff
DONALD GRACEY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD GRACEY,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>KAISER PERMANENTE FLEXIBLE BENEFITS PLAN,<br><br>　　　　Defendant.<br>_____/ | No. C 07-03853 VRW<br><br>DECLARATION OF DONALD GRACEY IN OPPOSITION TO MOTION FOR SUMMARY JUEGMENT<br><br>Date: March 27, 2008<br>Time: 2:30 p.m.<br>Ctrm: 6 |

I, DONALD GRACEY, declare as follows:

1.　　　　I am the Plaintiff in the above matter.

2.　　　　In early January 2008 I received notice from the Social Security Administration dated December 28, 2007 advising that I was disabled within the meaning of Social Security and entitled to Social Security Disability Insurance benefits. A copy of that document is attached hereto as Exhibit A.

3.　　　　Shortly thereafter, Social Security paid $29,679.00 for past benefits. $5,380.00 of that sum went to my attorney and I received the balance. Since January 2008, I have been receiving $2003.00 per month in Social Security Disability Insurance benefits.

4.      If called as a witness, I could and would testify competently to the foregoing.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 6th day of March 2008 at Danville, California.

*Donald Gracey*

# EXHIBIT A

**SOCIAL SECURITY ADMINISTRATION**
Office of Disability Adjudication and Review

## DECISION

| IN THE CASE OF | CLAIM FOR |
|---|---|
| Donald Jeffrey Gracey<br>(Claimant) | Period of Disability and Disability Insurance Benefits |
| (Wage Earner) | (Social Security Number) |

## JURISDICTION AND PROCEDURAL HISTORY

This case is before me on a request for hearing timely filed on May 7, 2007 (20 CFR 404.929 *et seq.*). The evidence of record supports a fully favorable decision; therefore no hearing has been held (20 CFR 404.948(a)). The claimant is represented by Ronald D. Miller, an attorney.

On March 15, 2006, the claimant filed an application for disability indicating that he was born on September 12, 1953, completed high school and two years of college, and performed past skilled work as a property manager and construction manager. He has alleged disability since January 19, 2006 due to diabetes with complications, chronic depression, and heart problems due to cardiomyopathy.

## ISSUES

The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity (SGA) by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

There is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2011. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful review of the entire record, I find that the claimant has been disabled from January 19, 2006 through the date of this decision. I also find that the insured status requirements of the Social Security Act were met as of the date disability is established.

See Next Page

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, I must determine whether the claimant is engaging in SGA, which is defined as work activity that is both substantial and gainful (20 CFR 404.1520(b)). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, I must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (RFC) (20 CFR 404.1520(e)). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

Next, I must determine at step four whether the claimant has the RFC to perform the requirements of his past relevant work (20 CFR 404.1520(f)). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), I must determine whether the claimant is able to do any other work considering his RFC, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of

See Next Page



going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education, and work experience (20 CFR 404.1512(g) and 404.1560(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, I make the following findings:

1. The claimant's date last insured is December 31, 2011.

2. The claimant has not engaged in SGA since January 19, 2006, the alleged onset date (20 CFR 404.1520(b) & 404.1571 *et seq.*).

3. The claimant has the following severe impairments: coronary artery disease, status post bypass surgery, with continued chest pain and chronic heart failure; cardiomyopathy; diabetes; generalized chronic fatigue and weakness secondary to diabetes and cardiovascular dysfunction; hypertension; sleep apnea with subsequent daytime lethargy; seizure disorder; major depressive disorder, recurrent; and a generalized anxiety disorder (20 CFR 404.1520(c)).

These medical conditions result in marked limitations in the claimant's ability to perform basic physical and mental work related activity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).

In reaching this conclusion, I paid particular attention to the Listing sections related to endocrine, cardiovascular, pulmonary, and mental disorders and dysfunction.

5. After careful consideration of the entire record, I find that the claimant's multiple impairments and associated chronic symptomatology precludes him from the sustained performance of any work-related activity, at any exertional level, on a consistent, predictable, regular, reliable, and sustained basis.

In making this finding, I considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

There is no basic conflict in the medical record which indicates that the claimant has been living a rather marginalized existence since the date of onset due to a number of chronic serious medical conditions, as summarized above. He has been treated frequently and extensively since

See Next Page

onset for the above noted impairments. However, despite appropriate treatment and therapy, he remains markedly symptomatic. In essence, I find that the claimant has not experienced sufficient improvement in his level of symptomatology, for any significant period of time, as to allow him to return to the performance of SGA.

Specifically, relative to the claimant's RFC, I find that when his physical and mental impairments are combined, he is restricted to the performance of a markedly narrowed range of sedentary work activity. Specifically, on a physical exertional basis, his residual cardiovascular and diabetic symptomatology, including significant daily weakness and fatigue, precludes the level of standing, walking, lifting, and carrying required to perform more than sedentary work activity.

In addition, the claimant's ability to perform even sedentary work is further limited secondary to the affects of chronic chest pain, shortness of breath on minimal exertion, daily lethargy and somnolence secondary to sleep apnea, anxiety over his general medical status, and major depressive disorder, with loss of interest in normal daily activities, lack of motivation, and lack of energy. When combined, the effects of his multiple impairments and the associated effects of his multiple medications have resulted in deficits in concentration, attention span, and the ability to maintain focus on a task.

I find that in combination, the claimant's impairments and associated symptomatology preclude him from sustaining competitive work activity for a normal 8-hour workday and five-day workweek on a "regular and continuing basis", the regulatory standard. See Social Security Administration ruling 96-8p. In essence, his vocational workbase has been totally eroded.

It is clear from the record that when the claimant's symptoms are taken in combination, there is a marked reduction in his ability to function on a day-to-day basis. Indeed, secondary to review of his significant medical record, I find that the claimant's frequency of and need for both physical and mental medical treatment and therapy would in and of itself be a highly negative factor relative to his ability to sustain regular attendance in any type of employment.

Relative to the claimant's mental dysfunction, he has the following degree of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders Listings set forth in 20 CFR, Part 404, Subpart P, Appendix 1:

- moderate restriction of activities of daily living;
- moderate difficulties in maintaining social functioning;
- moderate difficulties in maintaining concentration, persistence or pace; and
- no episodes of decompensation in work or work like settings.

I also find that the claimant's mental impairments) do not satisfy the paragraph "C" criteria of the applicable mental disorder Listings, 12.04 and 12.06.

The above noted RFC is validated by a consistent objectively supported medical record. The record indicates a history of depression, anxiety, diabetes, hypertension, and advanced cardiovascular dysfunction, requiring cardiac bypass surgery in April 2000.

See Next Page

In January 2000, a myocardial perfusion scan revealed a markedly enlarged left ventricular chamber. There was significant global left ventricular hypokinesis and the left ventricular ejection fraction was reduced to 26%. The claimant recovered and returned to work.

In January 2005, a myocardial stress perfusion study revealed borderline global left ventricular function with an ejection fraction of 50%. Thereafter, the claimant's overall medical status began to progressively deteriorate, with a return of chest pain and shortness of breath, increasing residuals secondary to diabetes, and a progressively labile mental status.

In January 2006, relative to the claimant's mental status, a labile affect was noted. The claimant had an anxious mood secondary to continued and increasing chest pain. Treating psychologist Dr. Hasty noted that treatment continued for recurrent major depressive disorder with a Global Assessment of Functioning (GAF) of 55. I note that such a GAF is indicative of moderate problems relative to both social and occupational adaptive functioning.

In March 2006, Dr. Hasty noted evidence of continuous suicidal ideation, chronic depression, chest pain, insomnia, lack of energy, reduced concentration, and anhedonia. The claimant was noted to be somewhat paranoid, stating that people do not like him. He was found to be withdrawing from others. He remained on psychotropic medication. The claimant was found to be seriously limited relative to carrying out even very short and simple instructions, maintaining attention for two-hour segments, working in coordination with others, making simple decisions, completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number of rest periods, and dealing with the stress of semiskilled and skilled work. It was noted that the claimant's deteriorating mental status was exacerbating his cardiac condition.

In June 2006, the findings of the claimant's treating source were substantiated by the psychological consultative evaluation performed by Dr. Khoi. Diagnosis was major depression and rule out cognitive disorder. The claimant was found to be experiencing significant symptoms of depression. The claimant noted that he was being followed by both a psychiatrist and a therapist. The claimant's performance on testing was found to the affected by his depression and fatigue.

Dr. Khoi concluded that the claimant would have:

- marked impairment in his ability to withstand the stress of a routine workday;
- moderate to marked restriction in his ability to interact appropriately with coworkers, supervisors, and the public on a regular basis; and
- further restrictions secondary to the affects of his cardiomyopathy and diabetes.

In fact, the claimant's physical status was severely debilitated, as noted by consultative examiner Dr. Brody in June 2006. After his examination, he diagnosed status post viral cardiomyopathy, subsequent triple bypass grafting, and incipient congestive heart failure. His condition was found to be complicated by sleep apnea, obesity, and diabetes.

The claimant's functional status was found to be markedly reduced:

See Next Page

- Walking and standing 5 to 10 minutes on a PRN basis to a total of one hour a day;
- Lifting and carrying to 5 pounds on a PRN basis only;
- Postural movements were also to be on a PRN basis;
- Lying down was found to be limited by orthopnea; and
- No limitations were found relative to sitting

In June 2006, treating source Dr. Hlavac supported the findings of Dr. Brody in concluding that the claimant fell within cardiac class II-III and, therefore, was permanently disabled

I note that even DDS consultative physicians found the claimant to have moderate limitations in his ability:

- to maintain attention and concentration for extended periods;
- to respond appropriately to changes in the work setting;
- to interact appropriately with the general public;
- to complete a normal workday and workweek without interruptions from psychologically based symptoms; and
- to perform at a consistent pace.

In September 2006, the claimant was seen at the emergency department complaining of chest pressure with nausea. Symptoms included chest pain, shortness of breath, fatigue, and weakness. He was admitted to the hospital at that time for further workup.

In October 2006, the claimant was taken by ambulance to the emergency room after experiencing episodes of syncope and shortness of breath.

A cardiac assessment dated October 9, 2006, from treating source Dr. Hlavac, notes that the claimant continued with a labile glucose, chest pain, palpitations, shortness of breath, fatigue, and weakness. It was indicated that stress had played a large role in exacerbating the claimant's cardiac and diabetic symptoms. Indeed, the claimant was found to be incapable of even low stress activity. In this regard, it was noted that the claimant continued under treatment for depression and anxiety. It was found that the claimant would require a job permitting shifting positions at will as well as allowing for unscheduled work breaks during the day of 15 to 30 minutes duration. The claimant was found to have the capacity to lift up to 10 pounds on an occasional basis. Dr. Hlavac opined that the claimant could sit for less than two hours in an eight hour workday and stand/walk for about two hours in an eight hour day. I note that such a schedule would preclude the claimant from sustaining an ordinary workday in the competitive marketplace. I find that such conclusion is consistent with the objective findings as well as the opinions of other treating and evaluating sources of record.

I note that the conclusions of the claimant's treating physician, as well as other credible and well qualified examining sources, if well supported by the record, are always entitled to significant probative weight. If such opinion and conclusions of the treating source are well supported and not inconsistent with other credible and well documented medical sources, then controlling probative weight must be given to the treating source (20 CFR 404.1527 and 416.927 and SSR 96-2p).

See Next Page

In November 2006, the claimant felt funny and fell off a ladder, hitting his head. He called his wife. Neighbors came to the home and found him in bed, incontinent of urine. He was started on anti-seizure medication.

In February 2007, Dr. Hlavac submitted an updated report indicating that the claimant continued his long-term battle with labile diabetes, tenuous cardiac issues including cardiomyopathy with angina, and sleep apnea. He noted that the claimant's condition had become even more complicated since February 2006 due to the development of a seizure disorder.

The remainder of the medical record is cumulative and consistent with the above noted medical findings and conclusions. It does not reveal any significant improvement in the claimant's overall medical condition.

In recent statements, the claimant notes that he can no longer pursue any of his activities. "He cannot even do any work around the house anymore. He cannot even stay awake during the day anymore."

After considering the evidence of record, in which there is no significant conflict, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, and that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are fully credible. The general consensus of the medical record is that the claimant is not capable of sustaining any type of work activity. I agree.

State Agency and DDS concluded that the claimant remained capable of performing simple repetitive unskilled light work. I disagree. Such functional conclusions are not only inconsistent with the treating source record, they are also inconsistent with the findings and conclusions of DDS's own consultative examiner's, Drs. Brody and Khoi.

Dr. Khoi opined that the claimant was not capable of withstanding the stress of a routine workday and Dr. Brody concluded that the claimant, at best, was capable of performing only a narrow range of sedentary work activity. Such conclusions are in line with the treating source record.

Relative to the ultimate functional conclusions of State Agency and DDS, I find that the claimant's highly persuasive and objectively supported subjective complaints, the combined effect of his impairments, as well as his need for continued frequent and aggressive physical and mental medical treatment, was not afforded appropriate probative weight by State Agency or DDS. See 20 CFR 404.1529 and 416.929 and SSR 96-7p. I therefore accord the medical opinions of State Agency and DDS little probative weight because all other medical opinions of record are more consistent with the record as a whole. I find that the functional assessment of State Agency and DDS is not currently supported by a preponderance of the credible evidence of record.

6. **The claimant is unable to perform any past relevant work (20 CFR 404.1565).**

The demands of the claimant's past relevant work exceed his RFC.

See Next Page

7. The claimant was an individual closely approaching advanced age on the established disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. The claimant's acquired job skills do not transfer to other occupations within the RFC defined above (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and RFC, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

In determining whether a successful adjustment to other work can be made, I must consider the claimant's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11).

When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

Even if the claimant had the RFC for the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of "disabled" would be reached by direct application of Medical-Vocational Rule 201.14. A similar conclusion obviously results given his residual capacity for a markedly reduced range of sedentary work activity. Further guidance in this regard is provided by section 201.00 (h) of the Grid preamble as well as Social Security Administration rulings 85-15 (the functional effects of significant nonexertional symptomatology), 96-8p and 96-9p.

11. The claimant has been under a disability, as defined in the Social Security Act, from January 19, 2006 through the date of this decision (20 CFR 404.1520(g)).

See Next Page

## DECISION

Based on the Title II application for a period of disability and disability insurance benefits filed on March 15, 2006, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act beginning on January 19, 2006.

Major Williams, Jr.
Administrative Law Judge

Date    DEC 28 2007