1   FRANK N. DARRAS #128904
    LISSA A. MARTINEZ #206994
2   SHERNOFF BIDART & DARRAS, LLP
3   3257 East Guasti Road, Suite 300
    Ontario, CA  91761
4   Telephone:  (909) 390-3770
    Facsimile:  (909) 974-2121
5   Email:  fdarras@sbd-law.com

6   Attorneys for Plaintiff

7

8                       UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10

11  MARIANNE DILLEY,                       Case No.: C 07-01831 PJH

12          Plaintiff,                     **PLAINTIFF'S NOTICE OF MOTION
                                           AND MOTION RE ENTITLEMENT TO
13      vs.                                DISCOVERY; MEMORANDUM OF
                                           POINTS AND AUTHORITIES**
14  METROPOLITAN LIFE INSURANCE
15  COMPANY; BANK OF AMERICA LONG          [Filed concurrently with:
    TERM DISABILITY BENEFITS PLAN,         -   Declaration of Lissa A. Martinez;
16                                         -   [Proposed] Order.]
            Defendants.
17                                         Date:      December 5, 2007
18                                         Time:      9:00 a.m.
                                           Ctrm:      3, 17th Floor
19                                         Judge:     Hon. Phyllis J. Hamilton

20

21  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

22          NOTICE IS HEREBY GIVEN that on December 5, 2007, or as soon thereafter as

23  counsel may be heard by the Honorable Phyllis J. Hamilton, in Courtroom 3 of the above entitled

24  Court, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiff Marianne Dilley

25  will, and hereby does, move this Court for an order permitting Plaintiff to conduct limited

26  discovery into Defendant Metropolitan Life Insurance Company's ("MetLife") conflict of

27  interest and the effect of that conflict on MetLife's decision to terminate Ms. Dilley's disability

28  benefits.  Such discovery is permitted by *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 91711  TEL 909 621 4935

1   955 (9th Cir. 2006) and its progeny.

2          Plaintiff brings this motion pursuant to the Court's July 12, 2007 Order regarding the

3   Initial Case Management Conference of the same date, in which the Court instructed that "the

4   parties shall meet and confer regarding discovery.  If an agreement is not reached on the

5   discovery issue plaintiff counsel may file a motion on entitlement to discovery."[1]  (Declaration

6   of Lissa A. Martinez ("Martinez Decl."), ¶ 3.)  Counsel have met and conferred on the discovery

7   issues in this case through letters, emails, and teleconferences.  (*Id.* at ¶¶ 5, 7-9.)  Although

8   efforts to address the discovery issues informally were unsuccessful, necessitating this motion,

9   the parties' efforts were not futile as they were able to narrow the discovery in dispute.  (*Id.*)

10          This motion is based on this Notice of Motion and Motion Re Entitlement to Discovery;

11   the following Memorandum of Points and Authorities in support thereof; the accompanying

12   Declaration of Lissa A. Martinez and exhibits thereto; the pleadings and other documents in the

13   Court's file on this matter; and such other matters as may be presented to the Court at hearing.

14

15   DATED:  October 31, 2007                Respectfully submitted,

16                                          SHERNOFF BIDART & DARRAS, LLP

17

18                                          ___/s/ Frank N. Darras_____
                                            FRANK N. DARRAS
19                                          LISSA A. MARTINEZ
                                            Attorneys for Plaintiff
20                                          MARIANNE DILLEY

21

22

23

24

25

26

27   _____

28   [1] On October 9, 2007, the Court signed a Stipulation and Order continuing the motion filing
     deadline until October 31, 2007 with a hearing date of December 5, 2007.  (Martinez Decl., ¶ 6.)

PLAINTIFF'S MOTION RE ENTITLEMENT TO DISCOVERY

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 91711  TEL 909 621 4935

Case 3:07-cv-01831-PJH    Document 24    Filed 10/31/2007    Page 2 of 25

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I. INTRODUCTION ......................................................................................... 1

II. FACTUAL SUMMARY .................................................................................. 1

III. SUMMARY OF DISCOVERY DISPUTES ............................................................... 5

   A. The Parties Met And Conferred Regarding Ms. Dilley's Proposed Discovery
      Requests, But Were Unable To Resolve All Of The Discovery Disputes ............. 5

   B. Interrogatories In Dispute ......................................................................... 6

      1. Interrogatory No. 5 .......................................................................... 6

      2. Interrogatory No. 6 .......................................................................... 6

   C. Requests For Production Of Documents In Dispute ...................................... 7

      1. Request for Production No. 1 ............................................................. 7

      2. Request for Production No. 2 ............................................................. 7

      3. Request for Production No. 3 ............................................................. 7

      4. Request for Production No. 4 ............................................................. 7

      5. Request for Production No. 5 ............................................................. 7

      6. Request for Production No. 6 ............................................................. 7

      7. Request for Production No. 7 ............................................................. 7

      8. Request for Production No. 8 ............................................................. 7

      9. Request for Production No. 9 ............................................................. 8

      10. Request for Production No. 10 .......................................................... 8

      11. Request for Production No. 11 .......................................................... 8

      12. Request for Production No. 12 .......................................................... 8

Case 3:07-cv-01831-PJH    Document 24    Filed 10/31/2007    Page 3 of 25

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 91711 TEL 909 621 4935

Case No. C 07 1831 PJH

PLAINTIFF'S MOTION RE ENTITLEMENT TO DISCOVERY

13. Request for Production No. 13........................................................................8

14. Request for Production No. 14........................................................................8

15. Request for Production No. 15........................................................................9

D. Depositions In Dispute........................................................................9

1. Deposition of NMR/Elite Physicians Limited. ................................................9

2. Deposition of Marc Soriano, M.D. ................................................................9

3. Depositions of Metropolitan Life Insurance Company....................................9

IV. ARGUMENT ........................................................................................10

A. Discovery Relating To A Plan Administrator's Conflict Of Interest Is Permitted
Under *Abatie* And Its Progeny ........................................................................10

B. Ms. Dilley Has Presented A Prima Facie Case of MetLife's Inherent Conflict Of
Interest, Entitling Her To Limited Discovery ......................................................13

C. Ms. Dilley's Proposed Discovery Is Narrowly Tailored To Demonstrate MetLife's
Conflict Of Interest. ........................................................................................16

V. CONCLUSION........................................................................................19

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 91711 TEL 909 621 4935

Case No. C 07 1831 PJH

PLAINTIFF'S MOTION RE ENTITLEMENT TO DISCOVERY

# TABLE OF AUTHORITIES

Cases

*Abatie v. Alta Health & Life Insurance Co.*
   458 F.3d 955 (9th Cir. 2006) *(en banc)* .............................................. 1, 5, 10, 11, 13, 14, 15, 16

*Alvarez v. Unum Life Ins. Co. of Am.*
   2007 WL 2348737 (N.D. Cal. Aug. 14, 2007)................................................................... 13

*Austin v. Continental Casualty*
   216 F. Supp. 2d 550 (W.D. N.C. 2002) ........................................................................... 15

*Baldoni v. UnumProvident, Illinois Toolworks, Inc.*
   2007 WL 649295 (D. Or. Feb. 26, 2007)......................................................................... 12

*Beckstrand v. Electronic Arts Group Long Term Disability Ins. Plan*
   2007 WL 1599769 (E.D. Cal. Jun. 4, 2007) ............................................................. 13, 19

*Black & Decker Disability Plan v. Nord*
   538 U.S. 822  123 S. Ct. 1965 (2003)............................................................................. 15

*Groom v. Standard Ins. Co.*
   492 F. Supp. 2d 1202 (C.D. Cal. 2007) .......................................................................... 13

*Gullidge v. Hartford Life & Acc. Ins. Co.*
   501 F. Supp. 2d 1280 (C.D. Cal. 2007) .......................................................................... 13

*Harper v. Unum Life Ins. Co. of Am.*
   2007 WL 1792004 (E.D. Cal. Jun. 19, 2007) ........................................................... 13, 19

*Ladd v. ITT Corp.*
   148 F.3d 753 (7th Cir. 1998).......................................................................................... 15

*Linich v. Broadspire Services, Inc.*
   2007 WL 841509 (D. Ariz. Mar. 16, 2007) .................................................................... 12

*Liu v. Standard Ins. Co.*
   457 F. Supp. 2d 1030 (C.D. Cal. 2006) ..................................................................... 12, 18

*McCurdy v. Metropolitan Life Ins. Co.*
   2007 WL 915177 (E.D. Cal. Mar. 23, 2007) ............................................................. 12, 19

*Regula v. Delta Family-Care Disability Survivorship Plan*
   266 F.3d 1130 (9th Cir. 2001)....................................................................................... 15

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 91711 TEL 909 621 4935

Case No. C 07 1831 PJH

*Reipsa v. Metropolitan Life Insurance Co.*
   2002 U.S. Dist. LEXIS 13188 (N.D. Ill. 2002) ........................................................ 15

*Toven v. Metropolitan Life Insurance. Co.*
   --- F. Supp. 2d ---, 2007 WL 2713579 (C.D. Cal. Sept. 12, 2007) ........................ 11, 12, 13, 18

*Vartanian v. Metropolitan Life Insurance Co.*
   2002 WL 484852 (N.D. Ill. Mar. 29, 2002) ........................................................... 15

*Welch v. Metropolitan Life Insurance Co.*
   480 F.3d 942 (9th Cir. 2007) .............................................................................. 11

Statutes

29 U.S.C. § 1001 *et seq.* ................................................................................ 1, 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 91711 TEL 909 621 4935

1                **<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

2   **I.**     **INTRODUCTION**

3        Plaintiff Marianne Dilley brings this motion regarding entitlement to discovery

4 concerning Defendant Metropolitan Life Insurance Company's ("MetLife") inherent conflict of

5 interest and the extent of and effect of that conflict on MetLife's decision to terminate Ms.

6 Dilley's disability benefits.

7        MetLife is the insurer and claims administrator of Defendant Bank of America Long

8 Term Disability Benefits Plan (the "Plan"), in which Ms. Dilley is a participant.[2] Because

9 MetLife is both the decider of which claims to grant or deny and the funder of benefits paid from

10 the Plan, MetLife has an inherent structural conflict of interest. This conflict of interest is

11 highlighted by MetLife's heavy reliance on the paper reviews of a physician contracted by

12 Network Medical Review Company ("NMR") whose financial success is directly dependent on

13 generating opinions favorable to MetLife.

14        Thus, in accordance with the Ninth Circuit's mandate in *Abatie v. Alta Health & Life*

15 *Insurance Co.*, 458 F.3d 955 (9th Cir. 2006) (*en banc*), Plaintiff seeks *limited* discovery

16 concerning the nature, extent, and effect of this conflict of interest on MetLife's decision-making

17 process in terminating Ms. Dilley's disability benefits.[3]

18   **II.**     **FACTUAL SUMMARY**

19        Ms. Dilley began working at Bank of America in 1977, where she remained employed for

20 twenty-seven years until her disability in March 2004. At the time of her disability, Ms. Dilley

21 was a Client Manager with Bank of America handling approximately 250 clients. Her duties,

22 which required a clear mind, high cognitive skills, an ability to fully focus and concentrate, and

23 Series 6 and 63 licenses, included: managing a portfolio of affluent consumer clients, serving

24 both their personal and business needs, with the primary focus of retaining and expanding

25 _____

26 [2]The Plan is an employee welfare benefit plan within the meaning of ERISA, 29 U.S.C. §§ 1001

27 *et seq.*

28 [3]The discovery Ms. Dilley seeks is attached hereto as Exhibits E-I to the Declaration of Lissa A.
Martinez.

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 91711 TEL 909 621 4935

1    existing relationships and to develop new relationships for Bank of America; demonstrating

2    comprehensive financial planning capability through assessing needs, identifying opportunities,

3    and recommending financial solutions; and meeting with clients where and when it was

4    convenient for them, which required driving countless miles to different cities.

5        As a Bank of America employee, Ms. Dilley was covered under the Bank of America

6    Long Term Disability Benefits Plan insured by MetLife.  The Plan defines "disability" as the

7    inability "to perform each of the material duties of your own occupation" and, after the first 24

8    months of benefit payments, the inability to "perform each of the material duties of any gainful

9    work or service for which you are reasonably qualified taking into consideration your training,

10   education, experience and past earnings.

11       On March 12, 2004, Ms. Dilley underwent a C5-C6 laminectomy due to Cervical

12   Spondylosis, as documented by an MRI scan which "showed spinal cord compression."  Upon

13   discharge from the hospital, Ms. Dilley was prescribed Motrin and Vicodin.  As her pain and

14   other symptoms did not improve, in September 2004 Ms. Dilley filed a claim for benefits under

15   the terms of the Plan.

16       On October 14, 2004, Stacey Friend, MetLife Case Management Specialist, wrote to Ms.

17   Dilley and advised her that benefits had been approved, but only for a limited time, from

18   September 9, 2004 (the end of the 180-day elimination period) through November 7, 2004.  Ms.

19   Friend explained that the decision was based on the Attending Physician Statement completed by

20   Kaiser Permanente physician, Dr. Conant, on October 4, 2004, which indicated that Ms. Dilley

21   was advised to return to work on November 8, 2004.  Ms. Friend's determination for an

22   advanced pay and close was based on a "nc [nurse consultant] walk up [that] medical supports ee

23   td from dlw to 11/7/04." Without obtaining further documentation to ascertain if Ms. Dilley had,

24   in fact, recovered from her symptoms and had actually been released to return to work, MetLife

25   denied her claim. Unfortunately, due to her disability, Ms. Dilley was unable to return to work as

26   both she and her physician had hoped.  However, MetLife unreasonably, arbitrarily and

27   capriciously never paid Ms. Dilley any further benefits.

28       Ms. Dilley continued to suffer from persistent and chronic pain, with her physicians

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 9711  TEL 909 621 4935

1  noting that even "Neurontin . . . doesn't help with [her] intense pain" and certifying her as totally

2  disabled.  However, on May 31, 2005, Ms. Friend wrote to Ms. Dilley and again denied her

3  further benefits based on another "NC Walk-up" conducted on the same date.  Ms. Friend

4  advised that Ms. Dilley's claim was to remain closed as of November 7, 2004, even though Ms.

5  Friend's letter acknowledged that "the medical information we received from Kaiser . . . reflect

6  continued complaints of radiating pain [and] indicate that you are attending a chronic pain clinic.

Case 3:07-cv-01831-PJH    Document 24    Filed 10/31/2007    Page 9 of 25

7  . . . The notes do document degenerative problems [and] indicate that you are treating with

8  medications, pain management, and injections."

9        On September 27, 2005, Ms. Dilley sent a handwritten letter to MetLife appealing the

10  denial of her benefits, explaining:

11    • "What is my job – I need to think – talk & write."

12    • "Pain makes this impossible – I am currently taking morphine for the pain which I

13      have 24/7."

14    • "If my job just required me to sit – crawl – or stand – if you know of such a job –

15      great, I can sit & be dumb."

16    • "I cannot read – I have double vision."

17    • "Writing is painful & hard."

18    • "[W]hy would I – a 27 year employee of Bank of America, who on average made 70-

19      80 [grand] a year – want to give that up?"

20    • "I loved my job.  I miss my job."

21  On October 6, 2007, Ms. Dilley sent another handwritten letter to MetLife, explaining:

22    • "Since taking morphine . . . I am in a trance."

23    • "Walking is still painful . . . writing is hard."

24    • "The pain is like every nerve is exploding – this interrupts my ability to think – talk."

25    • "I am unable to get up off the floor on my own – I have been stuck until someone is

26      able to help me."

27        After having paid benefits for only two months, MetLife sent Ms. Dilley's file to NMR

28  for a physician file review, which was performed by Marc Soriano, M.D.  In his October 26,

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 91711 TEL 909 621 4935

1    2005 report, Dr. Soriano opined that the medical information does not support functional

2    restrictions or limitations beyond 11/7/04 . . . There are no clinical objective findings noted in the

3    records to support any functional restrictions or limitations." Dr. Soriano further opined that Ms.

4    Dilley "takes only occasional Vicodin . . . and the medications listed would not prevent her from

5    returning to work or driving or hinder her ability to function." Dr. Soriano, however, did not

6    review all of Ms. Dilley's medical records; had he done so, he would have seen that she has been

Case 3:07-cv-01831-PJH     Document 24     Filed 10/31/2007     Page 10 of 25

7    taking Vicodin 1 pill every four hours or so and taking Morphine – 2 tablets 30 mg three times a

8    day, which is a high does of narcotics, contrary to Dr. Soriano's opinion.

9           Based on Dr. Soriano's report, on November 9, 2005, Sharon Muldrow, MetLife

10   Procedural Analyst, wrote to Ms. Dilley and advised that MetLife was upholding its denial upon

11   appeal review. Ms. Muldrow explained that Ms. Dilley's "file was referred to an Independent

12   Physician Consultant" who opined that "there are no clinical objective findings noted in the

13   records to support any functional restrictions or limitations." However, as an NMR contracted

14   reviewing physician, Dr. Soriano can hardly be considered "independent." Moreover, MetLife

15   knew that the Plan does not require "clinical objective findings" in order to obtain disability

16   benefits.

17          Ms. Dilley submitted further documentation substantiating her disability, but MetLife

18   went back to Dr. Soriano again, still without supplying him with all relevant medical records,

19   and based on his opinion, once again denied Ms. Dilley's claim for benefits. As Ms. Muldrow

20   explained in her August 3, 2006 letter, it was the Independent Physician Consultant that Ms.

21   Dilley was capable of performing her job. In so doing, MetLife (and Dr. Soriano) completely

22   ignored a letter from Dr. Conant (recall that MetLife felt so confident of Dr. Conant's opinions

23   that it had originally denied Ms. Dilley's benefits due to his "estimated" return to work date) in

24   which he explained:

25          •    "The following medications were prescribed for pain: Morphine, Neurontin,

26               Nortriptyline and Hydrocodone/Acetaminophen."

27          •    "Patient states these medicines caused confusion, transposition of numbers, sporadic

28               loss of memory (could not retain information)."

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION RE ENTITLEMENT TO DISCOVERY

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD  CLAREMONT CA 91711  TEL 909 621 4935

1    • "Patient is presently taking morphine 2 tablets 30 mg. three times a day . . . but still

2        has the above symptoms."

3    No benefits have been paid to Ms. Dilley since November 2004.

4    **III.    SUMMARY OF DISCOVERY DISPUTES**

5            On April 2, 2007, Ms. Dilley filed a complaint against MetLife and the Plan for disability

6    benefits due under an employee benefit plan regulated and governed by the Employee

Case 3:07-cv-01831-PJH    Document 24    Filed 10/31/2007    Page 11 of 25

7    Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*  (Martinez Decl., ¶ 2.)

8    During the July 12, 2007 Initial Case Management Conference, the Court specifically instructed:

9    "[T]he parties shall meet and confer regarding discovery.  If an agreement is not reached on the

10    discovery issue plaintiff counsel may file a motion on entitlement to discovery."  (*Id.* at ¶ 3 and

11    Ex. A.)

12            The parties attended private mediation on October, 4, 2007.  The case, however, did not

13    settle.  (*Id.* at ¶ 4.)  On October 5, 2007, Ms. Dilley sent MetLife her proposed discovery

14    requests, consisting of six interrogatories, 15 requests for production and five depositions, and

15    requested that the parties meet and confer regarding the proposed discovery.  (*Id.* at ¶ 5.)

16        **A.    The Parties Met And Conferred Regarding Ms. Dilley's Proposed Discovery**

17            **Requests, But Were Unable To Resolve All Of The Discovery Disputes**

18            On October 25, 2007, the parties met and conferred regarding Ms. Dilley's proposed

19    discovery requests.  (*Id.* at ¶¶ 7-9 and Ex. C.)  The parties discussed the Ninth Circuit's opinion

20    in *Abatie v. Alta Life & Health Insurance Co.*, 458 F.3d 955 (9th Cir. 2006) (*en banc*).  Ms.

21    Dilley explained that, as MetLife both administers and funds the disability plan, there was a

22    "structural" conflict such that her proposed discovery was warranted under *Abatie*.  MetLife

23    responded that *Abatie* did not even address the issue of discovery and, as such, *Abatie* did not

24    permit Ms. Dilley to conduct the proposed discovery.  (Martinez Decl., ¶ 7 and Ex. C.)  MetLife

25    also stated that the proposed discovery was overly broad and appeared to be the same type of

26    discovery served in all ERISA actions.  Ms. Dilley explained that the proposed discovery was

27    specific to her claim and narrowly tailored to the issue of MetLife's conflict of interest, which

28    included the relationship between MetLife and Network Medical Review Company ("NMR"), as

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 91711 TEL 909 621 4935

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION RE ENTITLEMENT TO DISCOVERY

1   MetLife relied on the opinion of an NMR retained physician to deny the claim. As such, Ms.

2   Dilley was allowed discovery on the issue of the general relationship between MetLife and

3   NMR, the specific relationship with regards to her claim, and the motivations leading to the

4   opinions of the reviewing NMR retained doctor, as well as the motivations of those individuals

5   who actually denied the claim, and that such information was not contained in the administrative

6   record. (*Id.*) Ultimately, the parties agreed to disagree on whether *Abatie* allowed Ms. Dilley to

7   conduct the proposed discovery. (*Id.*)

8       The meet and confer efforts, however, were not futile in that the parties were able to

9   narrow the discovery in dispute. Specifically, MetLife agreed to voluntarily respond to Ms.

10  Dilley's proposed Interrogatories Nos. 1, 2, 4 and 5, regarding the number of and amounts paid

11  to NMR for physician reviews as MetLife had already provided this type of discovery

12  information in the past. (*Id.* at ¶ 8 and Ex. C, ¶ 15 and Ex. J; *see also* Complaint, ¶ 27.)

13  However, with regard to Interrogatory No. 5, MetLife stated that it had no reason to know the

14  "name and address of the reviewing doctor's employer." (Martinez Decl., ¶ 8 and Ex. C.) With

15  respect to the remaining discovery, MetLife refused to respond or produce any documents as it

16  felt that the discovery was overly broad, unduly burdensome and unwarranted. (*Id.*)

17      The parties agreed that Ms. Dilley would formally serve Interrogatories (Set One)

18  consisting of proposed interrogatories 1, 2, 4 and 5 (renumbered as 1-4), and that Ms. Dilley

19  would hold off on formally serving the remaining discovery until after the Court ruled on the

20  instant motion. (*Id.* at ¶ 9 and Ex. D.)

21      **B.    Interrogatories In Dispute**

22          *1.    Interrogatory No. 5.*

23      "For each year from 2002 to the present, state the number of claims denied by MetLife

24  based, in whole or in part, upon medical record reviews by NMR." (*Id.* at ¶ 10, Ex. E.)

25          *2.    Interrogatory No. 6.*

26      "State the name of each and every claims manual, or other document setting forth

27  procedures to be used by MetLife personnel to process a disability claim, that was in full force

28  and effect during the subject claim." (*Id.*)

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 91711 TEL 909 621 4935

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD  CLAREMONT CA 9171  TEL 909 621 4935

1   C.     **Requests For Production Of Documents In Dispute**

2          *1.     Request for Production No. 1.*

3   "The Physician File Review Services Agreement dated on or about October 1, 1999

4   between MetLife and Network Medical Review Company ("NMR")." (*Id.* at ¶ 11, Ex. F.)

5          *2.     Request for Production No. 2.*

6   "Any and all updates, revisions and/or amendments to the Physician File Review

7   Services Agreement dated on or about October 1, 1999 between MetLife and NMR." (*Id.*)

8          *3.     Request for Production No. 3.*

9   "Any and all documents or communications between NMR and MetLife regarding the

10  procedures to be followed for review of medical records during the subject claim." (*Id.*)

11         *4.     Request for Production No. 4.*

12  "Any and all invoices received by MetLife from NMR regarding Plaintiff and/or the

13  subject claim." (*Id.*)

14         *5.     Request for Production No. 5.*

15  "Any and all documents and communications regarding payment by MetLife to NMR for

16  work performed pertaining to the Plaintiff and/or the subject claim." (*Id.*)

17         *6.     Request for Production No. 6.*

18  "Any and all documents and communications between NMR and MetLife regarding

19  Plaintiff and/or the subject claim." (*Id.*)

20         *7.     Request for Production No. 7.*

21  "Any and all documents and communications describing or relating to MetLife's

22  standards, guidelines or criteria for hiring outside medical consultants that were in full force and

23  effect during the subject claim." (*Id.*)

24         *8.     Request for Production No. 8.*

25  "Those portions of the MetLife Disability Claim Library that were in full force and effect

26  during the subject claim referencing and/or discussing the following:

27         •   Claim Management Guidelines for claim denials or terminations;

28         •   Claim Management Guidelines regarding self-reported diseases and

- 7 -                          Case No. C 07 1831 PJH

1    conditions;

2    • Objective Medical Evidence;

3    • Physician File Reviews ("PFR");

4    • Independent Medical Evaluations ("IME");

5    • Independent Physician Consultant Reviews ("IPC");

6    • Vendor Management of the Physician Consultant Program. *(Id.)*

Case 3:07-cv-01831-PJH    Document 24    Filed 10/31/2007    Page 14 of 25

7    **9.    *Request for Production No. 9.***

8    "Any and all documents and communications distributed to MetLife medical record

9    reviewers, including doctors, nurses, or other medical professionals, or claims persons entitled

10    'Clinical Best Practice Walk Ups or Walk Arounds.'" *(Id.)*

11    **10.    *Request for Production No. 10.***

12    "Any and all documents and communications distributed to MetLife medical record

13    reviewers, including doctors, nurses, or other medical professionals, or claims persons entitled

14    'checklist for Clinical Resource Walk Up.'" *(Id.)*

15    **11.    *Request for Production No. 11.***

16    "Any and all documents and communications distributed to MetLife medical record

17    reviewers, including doctors, nurses, or other medical professionals regarding pain and/or

18    subjective complaints that were in full force and effect during the subject claim." *(Id.)*

19    **12.    *Request for Production No. 12.***

20    "Any and all documents and communications distributed to MetLife medical record

21    reviewers, including doctors, nurses, or other medical professionals regarding objective medical

22    evidence that were in full force and effect during the subject claim." *(Id.)*

23    **13.    *Request for Production No. 13.***

24    "Any and all contracts between MetLife and any nurse, doctor or other medical

25    professional who reviewed documents regarding Plaintiff and/or the subject claim." *(Id.)*

26    **14.    *Request for Production No. 14.***

27    "Any and all documents and communications reflecting incentives, commissions, and/or

28    bonuses for any of MetLife's claims personnel who determined/participated in the determination

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD  CLAREMONT CA 91711  TEL 909 621 4935

- 8 -                          Case No. C 07 1831 PJH

1  of Plaintiff's claim." (*Id.*)

2          **15.    Request for Production No. 15.**

3      "Any and all documents and communications contained in the Administrative record for

4  the subject claim." (*Id.*)

5      **D.    Depositions In Dispute**

6          ***1.    Deposition of NMR/Elite Physicians Limited.***

7  The Person Most Knowledgeable from NMR regarding:

8      • Any and all agreements and/or contracts between NMR and MetLife that were

9          in full force and effect from 2002 to the present;

10     • Procedures to be used by NMR for medical record reviews performed on

11         behalf of MetLife;

12     • The number of files/claims referred to NMR from MetLife since 2002;

13     • Payments received from MetLife for services provided from 2002 to the

14         present;

15     • Payments received from MetLife for services provided regarding Plaintiff

16         and/or the subject claim;

17     • Reviews conducted by Marc Soriano, M.D. for NMR. (*Id.* at ¶ 12, Ex. G.)

18         ***2.    Deposition of Marc Soriano, M.D.***

19     The deposition of Marc Soriano, M.D., who performed a medical record review on behalf

20  of NMR. (*Id.* at ¶ 13, Ex. H.)

21         ***3.    Depositions of Metropolitan Life Insurance Company.***

22     The Person Most Knowledgeable from MetLife regarding:

23     • Payments to NMR/Elite Physicians Limited regarding services provided from

24         2002 to the present;

25     • Payments to NMR/Elite Physicians Limited regarding services provided

26         regarding Plaintiff and/or the subject claim. (*Id.* at ¶ 14, Ex. I.)

27     The deposition of Stacey Friend, Case Management Specialist, who authored the October

28  14, 2004 and May 31, 2005 denial letters. (*Id.*)

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD  CLAREMONT CA 91711  TEL 909 621 4935

- 9 -                                    Case No. C 07 1831 PJH

1    The deposition of Sharon Muldrow, Procedural Analyst, who authored the November 9,

2    2005 and August 3, 2006 appeal denial letters. (*Id.*)

3    **IV.    ARGUMENT**

4        **A.    Discovery Relating To A Plan Administrator's Conflict Of Interest Is**

5             **Permitted Under *Abatie* And Its Progeny**

6        In *Abatie v. Alta Health & Life Insurance Co.*, the Ninth Circuit held that district courts

7    may consider evidence outside of the administrative record in ERISA cases "*to decide the*

8    *nature, extent, and effect on the decision-making process of any conflict of interest*" to

9    determine the appropriate level of scrutiny to apply to a conflicted administrator's decision to

10    deny the plan participant's benefits. *Abatie*, 458 F.3d at 970 (emphasis added).

11        The Ninth Circuit explained that a "structural" conflict of interest exists when an insurer

12    "acts as both the plan administrator and the funding source for benefits." Such an arrangement

13    presents an inherent conflict because the insurer has an incentive to deny claims as money not

14    paid out for benefits remains in the insurer's pockets, increasing its own profits. *Id.* at 965-66.

15    Thus, the *Abatie* Court noted that an inherent conflict of interest, even if merely formal and

16    unaccompanied by bad faith or self-dealing, has an effect on judicial review. *Id.* Accordingly,

17    the *Abatie* Court held that a district court's abuse of discretion review of an ERISA plan

18    administrator's decision to deny benefits, must "be *informed by the nature, extent, and effect on*

19    *the decision-making process of any conflict of interest that may appear in the record*" and that

20    "[t]his standard applies to the kind of inherent conflict that exists when a plan administrator both

21    administers the plan and funds it, as well as to other forms of conflict." *Id.* at 967 (emphasis

22    added).

23        In sum, district courts must make "something akin to a credibility determination about the

24    insurance company's or plan administrator's reason for denying coverage under a particular plan

25    and a particular set of medical and other records." *Id.* at 969. The *Abatie* Court further stressed

26    that when faced with a possible conflict of interest, the district court must weigh that conflict of

27    interest on a case-by-case basis, considering "all the facts and circumstances," and decide "how

28    much or how little to credit the plan administrator's reason for denying insurance coverage," in

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 91711 TEL 909 621 4935

1   light of the conflict of interest. *Id.* at 968.

2       In adopting such a case-by-case approach, the Ninth Circuit further held that a plaintiff

3   no longer need present evidence of a serious conflict of interest for the district court to consider

4   the conflict's influence on the plan administrator's decision. *Id.* at 969. Rather, "[g]oing

5   forward plaintiffs will have the benefit of an abuse of discretion review that ***always considers the***

6   ***inherent conflict*** when a plan administrator is also the fiduciary, even in the absence of

7   'smoking gun' evidence of conflict." *Id.* (emphasis added).

8       The *Abatie* Court also explained that in weighing a conflict of interest, the district court

9   might consider whether the administrator: (1) provided "inconsistent reasons for denial"; (2)

10  failed to "adequately investigate or ask the plaintiff for necessary evidence"; or (3) repeatedly

11  denied deserving claims by misinterpreting plan terms or by making decisions contrary to the

12  weight of evidence in the record rather than using "truly independent medical examiners or a

13  neutral, independent review process." *Id.* at 968-69 & n.7.

14      Since *Abatie*, numerous courts have held that plan participant's are entitled to discovery

15  so that district courts may consider the conflict of interest evidence contemplated under *Abatie*.

16  For example, in *Welch v. Metropolitan Life Insurance Co.*, 480 F.3d 942 (9th Cir. 2007), the

17  Ninth Circuit explicitly acknowledged that discovery concerning a conflict of interest is

18  permitted, stating:

19      "Because an ERISA plaintiff may be permitted to supplement the adminisfrative record

20      with evidence of a conflict of interest on the part of the defendant . . . *some* discovery

21      aimed at demonstrating a conflict of interest may have been appropriate."

22  *Id.* at 949-50 (emphasis in original).

23      Similarly, in *Toven v. Metropolitan Life Insurance. Co.*, --- F. Supp. 2d ---, 2007 WL

24  2713579 (C.D. Cal. Sept. 12, 2007), the district court denied MetLife's motion for a protective

25  order to prohibit the depositions of two of its claims representatives and one of the physicians it

26  consulted prior to denying the plaintiff's disability claim. *Id.* at *1. The district court rejected

27  MetLife's argument that the district court's review was limited to the administrative record,

28  making the discovery sought impermissible. *Id.* The district court specifically noted that

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION RE ENTITLEMENT TO DISCOVERY

1    MetLife had an inherent structural conflict of interest because it both administered the plan and

2    paid benefits. As such, "the question [was] whether that conflict of interest affected Defendant's

3    decision-making," which required the court to make a credibility determination about the

4    administrator's reason for denying coverage based on a "particular set of medical and other

5    records." *Id.* (citing *Abatie*, 458 F.3d at 968-69) (internal quotations omitted). The district court

6    also noted that *Abatie* permitted the court to consider evidence outside of the administrative

7    record in deciding the conflict of interest issue. Thus, in concluding that there was "no basis for

8    prohibiting the discovery," the district court stated:

9        "The Court is at a loss to understand how evidence of a claims' adjuster's credibility, or of

10       that of the consultant, can be determined solely from the administrative record. In the

11       Court's view, *the rationale of Abatie leads inevitably to the conclusion that discovery*

12       *beyond the administrative record now must be allowed.*"

13   *Id.* at *1-2 (emphasis added)

14       In addition, several other district courts within the Ninth Circuit have confirmed an

15   ERISA Plaintiff's entitlement to discovery relating to a plan administrator's or insurer's conflict

16   of interest, including:

17       • *Liu v. Standard Ins. Co.*, 457 F. Supp. 2d 1030, 1038 (C.D. Cal. 2006) (permitting

18          depositions of medical reviewers after denying defendant's motion for summary

19          judgment in light of *Abatie*);

20       • *Baldoni v. UnumProvident, Illinois Toolworks, Inc.*, 2007 WL 649295, *6 (D. Or.

21          Feb. 26, 2007) (explaining that "the *Abatie* court contemplated that there would

22          continue to be circumstances in which an ERISA plaintiff should be allowed conflict

23          of interest discovery");

24       • *Linich v. Broadspire Services, Inc.*, 2007 WL 841509, *6 (D. Ariz. Mar. 16, 2007)

25          (holding plaintiff was entitled to discovery outside the administrative record relating

26          to "the Plan Administrator's conflict of interest");

27       • *McCurdy v. Metropolitan Life Ins. Co.*, 2007 WL 915177, *5 (E.D. Cal. Mar. 23,

28          2007) ("Given the appropriateness of considering . . . extrinsic evidence on the

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD  CLAREMONT CA 91711  TEL 909 621 4935

- 12 -

Case No. C 07 1831 PJH

1    conflict questions, it logically follows that a party should [be] entitled to conduct

2    discovery beyond the scope of the administrative record.");

3    • *Beckstrand v. Electronic Arts Group Long Term Disability Ins. Plan*, 2007 WL

4    1599769, *5 (E.D. Cal. Jun. 4, 2007) (permitting discovery to determine whether the

5    "plan had a record of denying benefits, continuously retaining doctors who rendered

6    opinions favorable to the plan, or had standards or protocols with which the

7    administrator complied");

8    • *Harper v. Unum Life Ins. Co. of Am.*,  2007 WL 1792004, *5 (E.D. Cal. Jun. 19,

9    2007) (permitting discovery aimed at the structural conflict of interest issue);

10    • *Groom v. Standard Ins. Co.*, 492 F. Supp. 2d 1202, 1205 (C.D. Cal. 2007)

11    (concluding that "limited discovery is permitted in an ERISA case post-*Abatie*");

12    • *Gullidge v. Hartford Life & Acc. Ins. Co.*, 501 F. Supp. 2d 1280, 1283 (C.D. Cal.

13    2007) (concluding that "[s]ome discovery regarding whether a conflict of interest

14    existed is therefore appropriate if the plaintiff plans to raise the issue of conflict of

15    interest at trial"); and

16    • *Alvarez v. Unum Life Ins. Co. of Am.*, 2007 WL 2348737, *7 (N.D. Cal. Aug. 14,

17    2007) (granting plaintiff's request for discovery).

18    Accordingly, where an ERISA plaintiff intends to raise the issue of the extent and effect

19    of a conflict of interest on a plan administrator's or insurer's decision-making process, as Ms.

20    Dilley does here, that plaintiff is entitled to conduct limited discovery concerning the conflict of

21    interest issue.

22    **B.    Ms. Dilley Has Presented A Prima Facie Case of MetLife's Inherent Conflict**

23    **Of Interest, Entitling Her To Limited Discovery**

24    An inherent structural conflict of interest exists where "an insurer . . . acts as both the

25    plan administrator and the funding source for benefits." *Abatie*, 458 F.3d at 965. *See also*

26    *Toven*, ---F. Supp. 2d ---, 2007 WL 2713579 at *1 (finding MetLife had a conflict of interest

27    because it both administered the plan at issue and paid the benefits).  Here, there is no doubt that

28    such a conflict exists. As the insurer of the Plan and the claims administrator of the Plan,

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD  CLAREMONT CA 91711  TEL 909 621 4935

- 13 -

Case No. C 07 1831 PJH

1  MetLife has an inherent conflict of interest because it both acts as a fiduciary by deciding

2  whether to grant or deny benefits under the Plan and funds any benefits paid out of the Plan.

3       Further evidence of MetLife's conflict of interest is evident based on MetLife's heavy

4  reliance on the opinion of an NMR hired physician in deciding to deny Ms. Dilley benefits.

5  Because MetLife pays NMR for the outside physician to conduct a medical record review and

6  render an opinion as to whether a claimant is disabled, the success of NMR, and ultimately the

7  reviewing physician, is dependent on their rendering opinions favorable to MetLife.  Such a

8  relationship also presents a conflict of interest, which must be weighed in determining the

9  amount of deference to give a plan administrator's decision to deny benefits, thus permitting

10  discovery on the issue. *See Abatie*, 458 F.3d at 969 & n.7 (implying that an administrator who

11  used examiners who were not independent or who had incentives to deny claims, bolsters a

12  plaintiff's claim that a conflict of interest affected the decision-making process, entitling it to less

13  deference).

14       Here, it is particularly important to understand the financial connection between MetLife

15  and NMR/Elite as it provides a very strong basis for the conflict of interest, which goes to the

16  very heart of the instant motion.  Specifically, Network Medical Review Company, Ltd.

17  ("NMR") was organized in 1994 and changed its name to Elite Physicians, Ltd ("Elite") in

18  March 2002.  From about 2002 until the present, NMR/Elite has had a business relationship with

19  MetLife whereby MetLife engaged the services of NMR/Elite to obtain medical opinions on the

20  medical conditions of individuals seeking benefits under MetLife disability insurance policies,

21  including, but not limited to, the subject policy.  From 2002 to the present, the number of files

22  reviewed and the amount of money paid to NMR/Elite from MetLife has steadily increased:

23       • 2003: 922 claims were referred, $568,305 was paid;

24       • 2004: 1,500 claims were referred, $934,690 was paid;

25       • 2005: 3,209 claims were referred, $2,063,890 was paid; and

26       • 2006 (through August 31): 3,360 claims were referred, $2,102,535 was paid.

27       (Martinez Decl., ¶ 15, Ex. J.)

28  Thus, any report from NMR/Elite is immediately suspect as NMR/Elite's financial

- 14 -                    Case No. C 07 1831 PJH

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 9711  TEL 909 621 4935

1   success is clearly dependent upon its relationship with MetLife, which would not continue *if*

2   NMR/Elite physicians were generating opinions unfavorable to MetLife.

3        Moreover, NMR/Elite Physicians, of which Dr. Soriano is a member, has been

4   recognized by the courts to consist of anything but "independent" medical reviewers.  In *Ladd v.*

5   *ITT Corp.*, 148 F.3d 753, 755 (7th Cir. 1998), the Seventh Circuit Court of Appeals noted that

6   "Network Medical Review Company" is a consulting firm "that MetLife uses extensively."  In

7   *Austin v. Continental Casualty*, 216 F. Supp. 2d 550 (W.D. N.C. 2002), a case in which the

8   insurer utilized, among others, NMR, defendant contended that NMR was "independent."  The

9   court rejected this contention stating that "review of the web sites maintained by the companies

10  [NMR] providing such experts tend to indicate that they are for hire by employers for purposes

11  of reducing costs."  *Id.* at 554.  The court concluded that "[i]t is clear that the sources of referral

12  in this case indicate that they [NMR] are not as 'independent' as defendant asserts."  *Id.*  See

13  also, *Reipsa v. Metropolitan Life Insurance Co.*, 2002 U.S. Dist. LEXIS 13188 (N.D. Ill. 2002)

14  also involving MetLife in which the court found "Defendant's relationship with NMR

15  troubling"; *Vartanian v. Metropolitan Life Insurance Co.*, 2002 WL 484852, at *10 (N.D. Ill.

16  Mar. 29, 2002), in which the court noted that "MetLife continually uses doctors from Network

17  Medical Review."

18       NMR/Elite's inherent bias favoring MetLife requires viewing any NMR/Elite report with

19  a great deal of skepticism.  *See Regula v. Delta Family-Care Disability Survivorship Plan*, 266

20  F.3d 1130, 1143 (9th Cir. 2001) (expressing concern over an insurer repeatedly hiring the same

21  physicians as experts).  In fact, the Supreme Court has acknowledged that "physicians repeatedly

22  retained by benefits plans may have an incentive to make a finding of not disabled in order to

23  save their employers money and to preserve their own consulting arrangements."  *Black &*

24  *Decker Disability Plan v. Nord*, 538 U.S. 822, 832, 123 S. Ct. 1965, 1971 (2003) (quotations

25  omitted).

26       Here, Ms. Dilley has raised the issue of a conflict of interest and intends to raise the issue

27  at trial.  Therefore, the district court must consider the nature and extent of the conflict of interest

28  in determining "how much or how little to credit" MetLife's reason for denying Ms. Dilley

- 15 -       Case No. C 07 1831 PJH

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 91711  TEL 909 621 4935

1    benefits under the Plan.  *See Abatie*, 458 F.3d at 968.  Thus, in accordance with *Abatie* and its

2    progeny, the Court should permit Ms. Dilley to conduct limited discovery relating to the conflict

3    of interest issue, set forth in the proposed Interrogatories, Document Requests and Deposition

4    Notices/Subpoenas attached hereto.  (*See* Martinez Decl., ¶¶ 10-14, Exs. E-I.)

5        **C.    Ms. Dilley's Proposed Discovery Is Narrowly Tailored To Demonstrate**

6            **MetLife's Conflict Of Interest.**

7        The discovery Ms. Dilley seeks to propound is limited to demonstrating the extent and

8    effect of MetLife's conflict of interest, as permitted by *Abatie*.  Ms. Dilley does not seek

9    unlimited discovery, nor does she seek discovery regarding the *merits* of MetLife's decision to

10   terminate her disability benefits.

11       The *Abatie* Court specifically instructed that in assessing how much weight should be

12   accorded to a conflict of interest in finding whether an abuse of discretion occurred or not,

13   district courts could consider such matters as "evidence of malice, of self dealing, or of a

14   parsimonious claims-granting history"; "inconsistent reasons for denial"; failure "to adequately

15   investigate a claim or ask the plaintiff for necessary evidence"; failure "to credit a claimant's

16   reliable evidence"; whether an insurer or administrator "has repeatedly denied benefits to

17   deserving participants by interpreting plan terms incorrectly or by making decisions against the

18   weight of the evidence in the record"; whether an insurer or administrator "used truly

19   independent medical examiners or a neutral, independent review process"; whether the insurer or

20   administrator's employees have incentives to deny claims"; whether the insurer or

21   administrator's "interpretations of the plan have been consistent among patients"; and whether

22   the insurer or administrator "has minimized any potential financial gain through structure of its

23   business."  *See Abatie*, 458 F.3d at 968-70 & n.7.

24       Indeed, Ms. Dilley's proposed discovery is narrowly tailored to seek exactly the type of

25   information which *Abatie* contemplated a district court should consider in evaluating the nature,

26   extent and effect of a conflict of interest on an insurer's or plan administrator's decision-making

27   process.

28       Interrogatory No. 5 and Document Request Nos. 1-7 and 13-14 are designed to elicit

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD  CLAREMONT CA 91711  TEL 909 621 4935

- 16 -                                    Case No. C 07 1831 PJH

1    information concerning: (1) MetLife's financial relationship with NMR and other medical

2    personnel who reviewed Ms. Dilley's medical records; (2) MetLife's guidelines for using

3    medical reviewing companies; and (3) whether MetLife's claims personnel had any incentives to

4    deny claims.  Ms. Dilley contends MetLife denied her benefits in reliance on the reports of an

5    outside medical examiner retained by NMR to whom MetLife had regularly referred claims and

6    paid millions of dollars.  Ms. Dilley further contends that NMR is financially dependent on

7    MetLife and prejudiced to provide opinions that claimants are not disabled.  In turn, MetLife

8    heavily relies on these decisions to deny claims, which benefits MetLife because as the Plan's

9    insurer, it then avoids paying the claims.

10          Thus, the discovery requests are narrowly tailored and specifically directed at evidence of

11    whether NMR and the outside medical examiner are truly independent or influenced through

12    potential financial gain to deny claims, which is relevant to the district court's analysis of how

13    much weight to give the conflict of interest in determining whether MetLife abused its

14    discretion.

15          Similarly, Document Request Nos. 8-12 and Interrogatory No. 6 seek information

16    concerning MetLife's disability claims policies distributed by MetLife to its medical record

17    reviewers who reviewed Ms. Dilley's records, including guidelines for denying claims.  How

18    MetLife instructed its medical reviewers and whether those medical reviewers followed proper

19    procedures directly relates to the conflict of interest issue as Ms. Dilley contends, *inter alia*, the

20    medical reviewers' reports on which MetLife relied in denying her disability benefits, neither

21    followed the Plan's terms nor considered favorable evidence presented by Ms. Dilley's

22    examining physician supporting her disability claim, yet MetLife relied on those reports anyway.

23          As *Abatie* instructed, courts can consider whether an insurer denied benefits by

24    interpreting plan terms incorrectly or whether incentives existed to deny claims.  Thus, the

25    polices in effect at the time of Ms. Dilley's claim and distributed to medical reviewers reviewing

26    her records bears on exactly such matters the district court can consider in assessing MetLife's

27    credibility.  For example, if MetLife relied on its medical reviewers reports, despite their failure

28    to properly interpret the plan or other claims reviewing policies, in order to avoid paying Ms.

- 17 -                                          Case No. C 07 1831 PJH

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 9171  TEL 909 621 4935

1   Dilley's claim, such evidence demonstrates MetLife's decision was affected by its conflict of

2   interest.

3       Ms. Dilley also asks for all documents and communications contained in the

4   Administrative record for her claim.  (*See* Martinez Decl., ¶ 11, Ex. F, Document Request No.

5   15.)  Of course, Ms. Dilley is entitled to all evidence contained in the administrative record, as

6   such evidence is relevant not only to the conflict of interest issue, but also the merits of

7   MetLife's decision.

8       Moreover, the conflict of interest MetLife was operating under manifests itself through

9   those individuals who acted as MetLife's mind and voice – Case Management Specialist, Stacey

10  Friend, and Procedure Analyst, Sharon Muldrow – who determined Ms. Dilley's eligibility for

11  benefits.  Ms. Dilley seeks not only to uncover the conflicted nature of the claims administrators'

12  actions, inactions and decisions, but also to determine the extent and effect these administrators'

13  conflict of interest had on the determination that Ms. Dilley was no longer entitled to benefits.

14  The most efficient and accurate way to determine this information is through deposition

15  discovery.

16      Further, discovery directed at the reviewing physician, Dr. Soriano, is likewise

17  appropriate.  Deposing this physician will shed light on the nature, extent and effect of MetLife's

18  conflict of interest as MetLife relied heavily on Dr. Soriano's opinion in terminating Ms. Dilley's

19  claim.  Deposing Dr. Soriano will also reveal the extent of Dr. Soriano's relationship with and

20  financial reliance on NMR, which goes to the very heart of the conflict issue – is Dr. Soriano

21  truly "independent."  Moreover, as MetLife has already admitted that it had no reason to know

22  the "name and address of the review doctor's (i.e., Dr. Soriano) employer," this information can

23  be easily obtained by deposing Dr. Soriano.  Similarly, deposing MetLife and NMR designated

24  representatives about the relationship between MetLife and NMR will shed light on whether

25  MetLife used "truly independent medical examiners or a neutral, independent review process."

26      In short, the limited discovery Plaintiff seeks is exactly the type *Abatie* anticipated and

27  exactly the type of discovery courts have permitted in the wake of *Abatie*. *See, e.g., Toven*, --- F.

28  Supp. 2d ---, 2007 WL 2713579 at * 1-2 (permitting the depositions of two of MetLife's claim

- 18 -                    Case No. C 07 1831 PJH

Case 3:07-cv-01831-PJH     Document 24     Filed 10/31/2007     Page 25 of 25

1  representatives and the reviewing physician contracted by NMR); *Liu*, 457 F. Supp. 2d at 1038

2  (permitting depositions of medical reviewers); *Harper*, 2007 WL 1792004 at *5 (permitting

3  "discovery that explores the structural conflict of interest," including "information related to the

4  compensation of Defendant's in-house medical personnel"); *Beckstrand*, 2007 WL 1599769 at

5  *5 (permitting discovery that would lead to evidence that "the plan had a record of denying

6  benefits, continuously retaining doctors who rendered opinions favorable to the plan, or had

7  standards or protocols with which the administrator complied"); *McCurdy*, 2007 WL 915177 at

8  *5 (permitting discovery relating to, *inter alia*, Defendant's "claim and procedural manuals,

9  guidelines, bulletins, and memoranda, describing or pertaining to the handling of disability

10  claims").

11  **V.     CONCLUSION**

12      Based on *Abatie*, its progeny and the limited nature of the proposed discovery requests,

13  Ms. Dilley seeks an order from the Court compelling MetLife to produce all documents

14  responsive to Plaintiff's Request for Production of Documents Nos. 1-15 and provide responses

15  to Plaintiff's Interrogatories Nos. 5-6. Ms. Dilley further requests that the Court allow her to

16  take the depositions of Stacey Friend, Sharon Muldrow, Marc Soriano, M.D., MetLife designated

17  representatives and NMR designated representatives as set forth in Plaintiff's Deposition

18  Notices/Subpoenas.

19

20  DATED:  October 31, 2007          Respectfully submitted,

21                                    SHERNOFF BIDART & DARRAS, LLP

22

23       /s/ Frank N. Darras
         FRANK N. DARRAS

24       LISSA A. MARTINEZ
         Attorneys for Plaintiff

25       MARIANNE DILLEY

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION RE ENTITLEMENT TO DISCOVERY

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 91711 TEL 909 621 4935