1    SEDGWICK, DETERT, MORAN & ARNOLD LLP
     REBECCA A. HULL  Bar No. 99802
2    One Market Plaza
     Steuart Tower, 8th Floor
3    San Francisco, California 94105
4    Telephone: (415) 781-7900
     Facsimile: (415) 781-2635
5        email: rebecca.hull@sdma.com

6    Attorneys for Defendant
7    KAISER PERMANENTE FLEXIBLE
     BENEFITS PLAN
8

9                        UNITED STATES DISTRICT COURT

10                     NORTHERN DISTRICT OF CALIFORNIA

11   DONALD GRACEY,                          CASE NO. C 07-03853 (VRW)

12           Plaintiff,                      **DECLARATION OF REBECCA A. HULL
                                             IN SUPPORT OF DEFENDANT KAISER
13                                           PERMANENTE FLEXIBLE BENEFITS
         v.                                  PLAN'S REPLY BRIEF IN SUPPORT OF
14                                           MOTION FOR SUMMARY JUDGMENT**
     KAISER PERMANENTE FLEXIBLE
15   BENEFITS PLAN,
                                             **DATE:  MAY 1, 2008
16           Defendant.                      TIME:  2:30 P.M.
                                             COURTROOM:  6
17                                           JUDGE: HON. VAUGHN R. WALKER**

18

19           I, Rebecca A. Hull, declare:

20           1.      I am an attorney admitted to practice before this Court and before all the

21   courts of the State of California, and am a member of the law firm of Sedgwick, Detert, Moran &

22   Arnold LLP, counsel of record for defendant Kaiser Permanente Flexible Benefits Plan ("Plan").

23   The matters stated herein are within my personal knowledge and, if called upon to do so, I could

24   and would testify thereto. I make this declaration in support of the Plan's reply in support of its

25   motion for summary judgment.

26           2.      I have reviewed the papers filed by plaintiff Donald Gracey in opposition

27   to the Plan's motion for summary judgment, including the Request for Judicial Notice and the

28   Declaration of Michael E. Kinney, and the exhibits attached to those two documents. From my

                                                   -1-                    CASE NO. C 07-03853 (VRW)
     HULL DECLARATION RE PLAINTIFF'S OPP. TO PLAN'S MOTION FOR SUMMARY JUDGMENT

1  review of those documents, I am aware that plaintiff argues in opposition to the Plan's motion for

2  summary judgment that this Court should order the plaintiff be permitted to pursue certain

3  discovery, based upon orders (attached to plaintiff's Request for Judicial Notice) that have been

4  entered in two other actions.

5         3.      I noted in reviewing the documents discussed above in paragraph 2 that

6  plaintiff had not put before the Court the responses that have been served with regard to the

7  discovery propounded by the plaintiff in the *Dilley* case. I am personally familiar with such

8  responses, because I am counsel of record for the defendants in that action, and personally

9  participated in the preparation of the discovery responses. Attached hereto as Exhibit A is a true

10  and correct copy of Metropolitan Life Insurance Company's verified responses to plaintiff's

11  amended interrogatories in *Dilley v. Metropolitan Life Insurance Company, et al.* My clients and

12  plaintiff, through their respective attorneys, are in the process of determining how the issues

13  raised in these interrogatory responses, and in particular the extreme burden that would be

14  imposed by a substantive response to Interrogatory No. 5, should be resolved; no resolution of

15  that question has been reached as of this date.

16         4.      I further noted in reviewing the documents discussed above in paragraph 2

17  that plaintiff has requested that this Court look to the order issued in the *Walker* case as a model

18  for responding to plaintiff's request for discovery in this action. In the *Walker* case, the parties

19  through their respective counsel currently are discussing the extreme burden that would be

20  imposed by an attempt to isolate and provide discovery with regard to specific reviewing doctors.

21  To date, no resolution of that question has been reached.

22         I declare under penalty of perjury under the laws of the United States that the

23  foregoing is true and correct, and that this declaration was executed on March 13, 2008, at San

24  Francisco, California.

25

26

27                                                        Rebecca A. Hull

28

-2-                                        CASE NO. C 07-03853 (VRW)

HULL DECLARATION RE PLAINTIFF'S OPP. TO PLAN'S MOTION FOR SUMMARY JUDGMENT

# EXHIBIT A

1  SEDGWICK, DETERT, MORAN & ARNOLD LLP
   REBECCA A. HULL  Bar No. 99802
2  One Market Plaza
   Steuart Tower, 8th Floor
3  San Francisco, California 94105
   Telephone: (415) 781-7900
4  Facsimile: (415) 781-2635
   Email: rebecca.hull@sdma.com
5
   Attorneys for Defendants
6  Metropolitan Life Insurance Company,
   and Bank of America Long Term Disability Benefits Plan
7

8                     UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11  Marianne Dilley,                    CASE NO. C 07-01831 PJH

12         Plaintiff,                   **DEFENDANTS' RESPONSE TO
                                        PLAINTIFF'S AMENDED
13     v.                               INTERROGATORIES**

14  Metropolitan Life Insurance Company;
    Bank of America Long Term Disability
15  Benefits Plan,

16         Defendant.

17

18  PROPOUNDING PARTY:       Plaintiff MARIANNE DILLEY

19  RESPONDING PARTY:        Defendant METROPOLITAN LIFE INSURANCE
                             COMPANY
20
    SET NO.:                 ONE (1)
21
                          **PRELIMINARY STATEMENT**
22
            All responses of defendant Metropolitan Life Insurance Company ("MetLife") to these
23
    interrogatories are made with an express reservation of the objections set forth below in the
24
    General Objections section. The general objections may be interposed for the purpose of clarity
25
    in response to any particular interrogatory. Any specific objection set forth in response to a
26
    particular interrogatory is not and shall not be deemed a waiver of such any other objections set
27
    forth generally herein, nor shall any response provided subject to objection or following
28
    objection be deemed a waiver of such objection. These objections form a part of the response to

                                             -1-                      CASE NO. C 07-01831 PJH
    DEFENDANTS' RESPONSE TO PLAINTIFF'S AMENDED INTERROGATORIES

1 | each and every interrogatory, and any subparts therein, and are set forth here to avoid duplication
2 | and repetition.

3 |     The fact that MetLife has responded or objected to any interrogatory, or part thereof, does
4 | not constitute and shall not be construed as an admission that MetLife accepts or admits the
5 | existence of facts alleged or assumed by such interrogatory, or that such answer or objection
6 | constitutes admissible evidence, which premise is specifically denied. Nothing herein shall be
7 | construed as an admission or representation respecting the admissibility, truth, authenticity,
8 | accuracy or relevance of any documentary or other evidence. MetLife expressly reserves all
9 | objections to admission of such materials provided by applicable statutes and case law.

10 | ## GENERAL OBJECTIONS

11 |     A.    MetLife objects to plaintiff's interrogatories as overly broad, unduly burdensome
12 | and unlikely to lead to the discovery of admissible evidence.

13 |     B.    This action arises under the Employee Retirement Income Security Act of 1974
14 | ("ERISA"), 29 U.S.C. section 1001, *et seq.* and plaintiff's claim will be decided as a matter of
15 | law on the administrative record produced in initial disclosures.

16 |     C.    MetLife objects to plaintiff's interrogatories to the extent that they may be
17 | interpreted to seek documents and information regarding benefits other than long term disability
18 | insurance.

19 |     D.    MetLife objects to the Definitions and Instructions set forth in Plaintiff's
20 | Amended Interrogatories to the extent they exceed the procedures required by Rule 33, Fed. R.
21 | Civ. P., as unauthorized, unduly burdensome, improper and ambiguous.

22 |     MetLife incorporates the foregoing objections into each of its responses set out below, as
23 | if set forth in their entirety in each response.

24 | ## RESPONSES TO INTERROGATORIES

25 | ### INTERROGATORY NO. 1

26 |     For each year from 2002 to the present, state the number of claims that Metropolitan Life
27 | Insurance Company ("METLIFE") has referred to Network Medical Review and Network
28 | Medical Review affiliated companies or entities, including Elite Physicians, Ltd. (collectively

-2-        CASE NO. C 07-01831 PJH

1    "NMR"), for medical services, including (but not limited to) medical record reviews.

2    **RESPONSE TO INTERROGATORY NO. 1**

3        MetLife objects to this interrogatory on the ground that it is vague and ambiguous in its
4    use of the undefined term "medical services." Without waiving such objection, and on the
5    assumption that the interrogatory is intended to inquire about medical record reviews performed
6    by consulting physicians retained by NMR, MetLife answers more specifically as follows:

7        2002-2004:    MetLife objects to this aspect of Interrogatory No. 1 on the ground of
8    undue burden and oppression. MetLife has made a reasonable and good faith effort to retrieve
9    the information sought in this interrogatory, and has determined that responding fully to this
10   interrogatory would require approximately 37.3 hours of employee time to retrieve the data from
11   NMR invoices tendered to MetLife for the calendar years 2002-2004[1] (because such records are
12   reliably maintained only on microfilm for years prior to 2005),[2] and substantial additional time to
13   compile the requested information from such invoices. This estimate is based upon the
14   following: A query was run on MetLife's accounts payable system to determine how many
15   invoices were tendered by NMR to MetLife in calendar years 2002-2004. NMR tendered 373
16   invoices to MetLife in that period. MetLife stores its paid invoices on microfilm if they are more
17   than 90 days old. MetLife does not reliably store claim numbers and information concerning
18   individual claim file reviews on the accounts payable system. Information regarding individual
19   claims, including claim number, claimant name, and cost of review, can be found on a
20   spreadsheet attached to each invoice. Each row on each of the spreadsheets represents a separate
21   NMR file review. In order to identify the claims for which a physician retained by NMR
22   conducted a file review in 2002 through 2004, therefore, MetLife must locate the invoice's
23   voucher number on the accounts payable system, pull the corresponding microfilm from its on-

24

25   [1] It would realistically take a single employee more than 37.3 hours to complete the retrieval
     process, because MetLife has two microfilm readers and it cannot exclusively dedicate one
26   machine and one worker for almost an entire work week without neglecting other time-sensitive
     commitments. Thus, a worker assigned to handle the retrieval would only be able to retrieve
27   these invoices based on the availability of one of the two microfilm readers.

     [2] In gathering data to respond to these interrogatories, MetLife determined that its group
28   disability claims expense database does not contain reliably accurate data prior to 2005.

1  site storage facility, load the microfilm into one of two on-site microfilm readers, locate the

2  invoice on the microfilm, and print the invoice from the microfilm reader.  Another person must

3  then identify, track and tabulate information regarding the relevant claims.

4      2005: 2,304.

5      2006: 3,159.

6      2007: 3,593.

7  **INTERROGATORY NO. 2**

8      For each year from 2002 to the present, state the total amount paid by METLIFE to NMR

9  for medical services, including (but not limited to) medical record reviews.

10  **RESPONSE TO INTERROGATORY NO. 2**

11     MetLife objects to this interrogatory on the ground that it is vague and ambiguous in its

12  use of the undefined term "medical services."  Without waiving such objection, and on the

13  assumption that the interrogatory is intended to inquire about medical record reviews with regard

14  to group disability claims, performed by physicians retained by NMR, MetLife answers more

15  specifically as follows:

16     2002: $478,827.00

17     2003: $830,205.00

18     2004: $1,292,512.06

19     2005: $2,381,858.37

20     2006: $2,974,913.73

21     2007: $3,343,980.48

22  **INTERROGATORY NO. 3**

23     State the amount paid to NMR by METLIFE for work performed regarding Plaintiff

24  and/or the subject claim.

25  **RESPONSE TO INTERROGATORY NO. 3**

26     MetLife paid NMR $1,150 for the medical record reviews obtained during MetLife's

27  review of plaintiff's claim for LTD benefits.

28

-4-                          CASE NO. C 07-01831 PJH

DEFENDANTS' RESPONSE TO PLAINTIFF'S AMENDED INTERROGATORIES

1  **INTERROGATORY NO. 4**

2  For each doctor who reviewed medical records regarding the Plaintiff and/or the subject

3  claim on behalf of METLIFE, state the following:

4  • The name and address of the doctor's employer;

5  • Whether or not METLIFE had a contract with the doctor during the subject claim

6  that was in full force and effect; and,

7  • The amount paid for the medical record review and to whom the payment was

8  made.

9  **RESPONSE TO INTERROGATORY NO. 4**

10  The administrative record reflects that the following physician reviewed, evaluated and

11  prepared reports regarding medical records in connection with plaintiff's claim: M. Marc

12  Soriano, M.D., Board certified in neurological surgery, Assistant Clinical Professor, University

13  of Illinois School of Medicine.

14  MetLife does not know whether Dr. Soriano has an "employer," because it does not know

15  the legal relationship between Dr. Soriano and either the University of Illinois School of

16  Medicine or any other person or entity for which or to which Dr. Soriano provides professional

17  or other services. MetLife does not know the address of Dr. Soriano's employer, if any. MetLife

18  had no contract with Dr. Soriano at any relevant time.

19  MetLife's payment for the review of plaintiff's records was made to NMR, which

20  selected an appropriate reviewing physician based upon MetLife's specification of the area(s) of

21  expertise required for the review. As stated in response to Interrogatory number 3, the amount

22  paid to NMR with regard to plaintiff's claim was $1,150.00 for two separate medical record

23  reviews.

24  **INTERROGATORY NO. 5**

25  For each year from 2002 to the present, state the number of claims denied by METLIFE

26  based, in whole or in part, upon medical record reviews by NMR.

27  **RESPONSE TO INTERROGATORY NO. 5**

28  MetLife objects to this interrogatory on the ground that it is not reasonably calculated to

1  lead to discovery of relevant or admissible evidence, in that the bare fact of a claim denial is not
2  potentially relevant unless the denial was improper in light of the terms of the plan at issue and
3  the totality of the medical and other evidence bearing on the claim; the information sought in this
4  interrogatory, therefore, is not probative of the issue of whether the disposition of plaintiff's
5  claim was influenced by a structural conflict of interest. MetLife further objects to this
6  interrogatory on the ground of undue burden and oppression, for the following reasons.

7       MetLife in each of year from 2002 through 2007 processed tens of thousands of LTD
8  claims. For instance, in 2002, MetLife received 24,100 new LTD claims; in 2003, it received
9  25,200 new LTD claims; in 2004, it received 26,100 new LTD claims; in 2005, it received
10  28,600 new LTD claims; in 2006, it received 32,200 new LTD claims; and in 2007, the last year
11  for which there are records available, it received 32,700 new LTD claims, for a total of 168,900
12  new claims during those years. In those instances involving a medical determination, MetLife
13  obtained a medical record review prior to making its initial adjudication of a claim, and/or prior
14  to terminating benefits where a claim was initially paid. To the extent a claim was denied or
15  terminated on medical grounds and an administrative appeal was taken from the decision,
16  MetLife obtained a medical review of the claimant's records, as Department of Labor regulations
17  require. One referral service used by MetLife with regard to medical record reviews during
18  calendar years 2002 through 2007 was NMR. MetLife has attempted to retrieve the specific
19  information sought by this interrogatory, and has determined that it would require an estimated
20  2,264 hours of worker time in order to compile the requested information for the years 2005
21  through 2007. As noted above, it would require 37.3 hours of worker time to retrieve the NMR
22  invoices for the 2002-2004 period, after which MetLife would be able to determine the additional
23  time required to compile the requested information for the years 2002 through 2004, which it
24  presently is unable to estimate. These time estimates are based upon the following factors:
25  •  For the years 2005 through 2007, only, MetLife is able to search its group disability claims
26  expense database, which can identify by claim number all claims that were referred to NMR for
27  record reviews. In order to retrieve information about a specific claim (*e.g.*, whether it was
28  approved or denied, and if it was denied, the basis on which it was denied and whether the denial

-6-                                   CASE NO. C 07-01831 PJH

1    was based in whole or in part on a review by a physician retained by NMR), a worker must enter

2    in a separate system, MetLife's group disability claims system, the claim number for each referral

3    listed in order to retrieve and review the electronic diary notes for that claim. Based upon test

4    searches, it requires on average approximately 15 minutes per claim file to review the electronic

5    file, once it has been retrieved, in order to determine (1) whether the claim was denied, (2) if it

6    was denied, the basis on which it was denied, and (3) whether the denial was based in whole or

7    in part on a medical record review by a physician retained by NMR. The results of that search

8    then must be recorded in a manner that will permit them to be tabulated. A sample search

9    indicates that NMR medical record reviews were conducted in the course of MetLife's review of

10    approximately 9,056 total claims in the 2005 through 2007 period, at all stages of claim

11    adjudication. Accordingly, it would require approximately 2,264 hours of worker time (9,056

12    claims x 15 minutes/claim) to determine how many denials or terminations were based in whole

13    or in part on a review by a physician retained by NMR during that three year period.

14    •   For the years 2002 through 2004, NMR invoices currently exist only in microfilm form, as

15    noted above in response to Interrogatory No. 1. With regard to those invoices, it would be

16    necessary for a worker to retrieve the microfilm invoice and identify all of the claim numbers

17    listed on each invoice, before performing the group disability claims system search to retrieve the

18    associated electronic diary notes and make a determination as to whether the claim was denied or

19    terminated, and if so, whether the denial or termination was based in whole or in part on a review

20    by a physician retained by NMR. Based on test searches, MetLife could retrieve and print

21    approximately 10 microfilm NMR invoices every hour. Between 2002 and 2004, NMR tendered

22    373 total microfilmed invoices to MetLife. Thus, retrieving NMR invoices for the period 2002

23    through 2004 would take at least 37.3 worker hours, as set forth in response to Interrogatory No.

24    1, above. The further search of the electronic diary notes then would require 15 minutes per

25    claim on average, but the total number of claims is not known.

26    •   In addition to the time required for the retrieval and review of NMR invoices to identify

27    claim numbers related to NMR record reviews for the years 2002 through 2004, and in addition

28    to the time spent in searching the electronic diary notes for each claim in order to determine

1   whether the claim was denied and, if so, the bases on which it was denied for all of the years
2   between 2002 and 2007, additional time and expense in compiling the requested information
3   would be involved, as follows.

4    o  MetLife does not have sufficient employee staff to conduct the
5   necessary reviews in an expedited manner, and therefore it would
6   be necessary to obtain the services of qualified paralegals to
7   perform the searches. In order to have paralegals conduct the
8   searches, it would be necessary to spend some number of hours
9   training them with regard to MetLife's computerized claims
10   systems and the functions required. In addition, it would be
11   necessary to ensure that all persons retained for this function were
12   properly trained with regard to obligations under HIPAA and other
13   relevant privacy and medical records statutes and regulations.
14   MetLife estimates that a minimum of four hours would be required
15   as training time for each person who is to carry out this function.
16    o  MetLife has determined the costs of retaining the necessary
17   temporary staff that would be required to conduct this search in a
18   reasonably expedited manner. MetLife assumes that the file
19   review would be conducted in a location in the Midwest, with
20   lower costs and overhead than would be incurred if the review
21   were conducted in New York, where MetLife has its headquarters.
22   MetLife has been quoted a cost of approximately $22.00 per hour
23   for appropriately qualified temporary paralegals. Consequently,
24   the anticipated cost of labor to compile the information sought in
25   this interrogatory with regard to the three-year period of 2005-2007
26   is approximately $49,808 (2,264 hours x $22.00/hour). As noted
27   above, however, because the records for the four-year period of
28   2002-2004 have not been retrieved and the number of claims has

1               not been determined, MetLife is not able at this time to accurately

2               estimate the additional expense that would be incurred with regard

3               to compiling the information for that period, but assumes that it

4               would be comparable since it covers a longer time frame.

5           o  MetLife may not have the physical space, and it does not have the

6               equipment, to undertake an effort of this magnitude. To the extent

7               that MetLife has the space, if MetLife hires 30 temporary

8               paralegals to conduct this work in order to complete it relatively

9               quickly, it would cost MetLife approximately $25,000 just to equip

10              their workstations with the necessary computers and monitors.

11

12    DATED: February 15, 2008         SEDGWICK, DETERT, MORAN & ARNOLD LLP

13

14

                                   By: _____

15                            Rebecca A. Hull

                            Attorneys for Defendants

16                            Metropolitan Life Insurance Company,

                            and Bank of America Long Term Disability

17                            Benefits Plan

18

19

20

21

22

23

24

25

26

27

28

                CASE NO. C 07-01831 PJH

DEFENDANTS' RESPONSE TO PLAINTIFF'S AMENDED INTERROGATORIES

1          **VERIFICATION**

2          I, Laura Sullivan, declare as follows:

3          I am employed with Metropolitan Life Insurance Company as a Manager and have been

4    authorized to make this verification on its behalf. I have read DEFENDANTS' RESPONSE TO

5    PLAINTIFF'S AMENDED INTERROGATORIES, in the action Marianne Dilley v.

6    Metropolitan Life Insurance Company, et al., U.S. District Court, Northern District of California,

7    Case No. C 07-01831 PJH, and know the contents thereof. I am informed and believe and

8    thereon assert that the matters stated in said document are true and correct.

9          I declare under penalty of perjury under the laws of the United States that the foregoing is

10   true and correct. Executed at Mt. Prospect, Illinois on February 13, 2008.

11                              Metropolitan Life Insurance Company

12

13                              By _____
                                         Laura Sullivan
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                         -1-                         CASE NO. C 07-01831 PJH
SF/1360014v1                          VERIFICATION

1

## PROOF OF SERVICE

2    I am a resident of the State of California, over the age of eighteen years, and not a party to
the within action. My business address is Sedgwick, Detert, Moran & Arnold LLP, One Market
3    Plaza, Steuart Tower, 8th Floor, San Francisco, California 94105. On February 15, 2008, I
served the within document(s):

4

5    **DEFENDANTS' RESPONSE TO PLAINTIFF'S AMENDED
INTERROGATORIES**

6    ☐    FACSIMILE - by transmitting via facsimile the document(s) listed above to the
fax number(s) set forth on the attached Telecommunications Cover Page(s) on this
7         date before 5:00 p.m.

8    ☒    MAIL - by placing the document(s) listed above in a sealed envelope with postage
thereon fully prepaid, in the United States mail at San Francisco, California
9         addressed as set forth below.

10   ☐    PERSONAL SERVICE - by personally delivering the document(s) listed above to
the person(s) at the address(es) set forth below.

11   ☐    OVERNIGHT COURIER - by placing the document(s) listed above in a sealed
envelope with shipping prepaid, and depositing in a collection box for next day
12        delivery to the person(s) at the address(es) set forth below via .

13   Frank N. Darras                                    Attorneys For Plaintiff
Lissa A. Martinez
14   SHERNOFF BIDART & DARRAS, LLP
3257 East Guasti Road, Suite 300
15   Ontario, CA 91761
Telephone: (909) 390-3770
16   Facsimile: (909) 974-2121

17   I am readily familiar with the firm's practice of collection and processing correspondence
for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same
18   day with postage thereon fully prepaid in the ordinary course of business. I am aware that on
motion of the party served, service is presumed invalid if postal cancellation date or postage
19   meter date is more than one day after date of deposit for mailing in affidavit.

20   I declare under penalty of perjury under the laws of the State of California that the above
is true and correct. Executed on February 15, 2008, at San Francisco, California.
21

22                                              _Mark Mitobe_____
23                                                    Mark Mitobe

24

25

26

27

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP    28

---

**PROOF OF SERVICE**